IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INSULATORS AND ASBESTOS WORKERS   )
LOCAL NO. 14 PENSION FUND   )
  )
               Plaintiff,   )
     -against-   )    Case No.:  07-cv-00416-GMS
  )
GEORGE W. BUCKLEY, LINDA G.   )
ALVARADO, VANCE D. COFFMAN,   )
MICHAEL L. ESKEW, W. JAMES FARRELL,   )
HERBERT L. HENKEL, EDWARD M. LIDDY,   )
ROBERT S. MORRISON, AULANA L. PETERS,   )
ROZANNE L. RIDGEWAY, PATRICK D.   )
CAMPBELL, MOE S. NOZARI, FREDERICK   )
J. PALENSKY, RICHARD F. ZIEGLER,   )
  )
             Defendants,   )
     -and-   )
  )
3M COMPANY,   )
  )
         Nominal Defendant.   )

---

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

---

RIGRODSKY & LONG, P.A.
Seth D. Rigrodsky  (#3147)
Brian D. Long (#4347)
919 North Market Street, Suite 980
Wilmington, DE 19801
(302) 295-5310

*Attorneys for Plaintiff*

*Of Counsel*:

Barrack, Rodos & Bacine            Barrack, Rodos & Bacine
Alexander Arnold Gershon           Daniel E. Bacine
Regina M. Calcaterra               3300 Two Commerce Square
Gloria Kui                        2001 Market Street
1350 Broadway, Suite 1001         Philadelphia, Pennsylvania 19103
New York, New York 10018         (215) 963-0600
(212) 688-0782

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDING ..................................................................... 1

SUMMARY OF ARGUMENT .............................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 3

ARGUMENT ......................................................................................................................... 5

    I.    The Applicable Standard ............................................................................................ 5

    II.   The Proxy Statement Is Materially False or Misleading Since
        It States that Payments Under the Plan Are Deductible Under
        26 U.S.C. §162(m) Even Though the Stockholders' Rejection
        of the Plan Will Not Stop the Payments .................................................................... 6

    III.  The Proxy Statement Is Materially Misleading,
        Because It Omits the Material Terms of the Plan ...................................................... 9

    IV.  The Proxy Statement Also Violates Delaware Law ................................................. 11

    V.   Pre-Suit Demand Is Excused ................................................................................... 12

    VI.  The Court Should Enjoin Payments Under the Plan ................................................ 14

CONCLUSION .................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Blasband v. Rales,*
    971 F.2d 1034 (3rd Cir. 1992) ................................................................................12

*Brehm v. Eisner,*
    746 A.2d 244 (Del.Supr. 2000).............................................................................13

*Craftmatic Sec. Litig. v. Kraftsow,*
    890 F.2d 628 (3d Cir. 1989)..................................................................................11

*Diceon Electronics, Inc. v. Calvary Partners, L.P.,*
    772 F. Supp. 859 (D. Del. 1991)...........................................................................14

*Galef v. Alexander,*
    615 F.2d 51 (2nd Cir. 1980)..................................................................................12

*Gould v. American-Hawaiian S.S. Co.,*
    535 F.2d 761 (3d Cir. 1976)....................................................................................6

*Horowitz v. Fed. Kemper Life Assurance Co.,*
    57 F.3d 300 (3d Cir. 1995)......................................................................................5

*In re Anderson Clayton S'holder Litig.,*
    519 A.2d 669 (Del.Ch. 1986).................................................................................12

*In re CNET Networks, Inc.,*
    483 F. Supp. 2d 947 (N.D. Cal. 2007) ..................................................................14

*In re Computer Sciences Corp. Deriv. Litig.,*
    2007 WL 1321715 ................................................................................................14

*In re Stone & Webster Inc.,*
    2005 WL 1036556 (D.Del. 2005) .......................................................................5, 6

*In re Tri-Star Pictures, Inc. Litig.,*
    1990 WL 82734 (Del.Ch. 1990) ......................................................................12, 13

*In re Westinghouse Sec. Lit.,*
    832 F. Supp. 989 (W.D. Pa. 1993).....................................................................13, 14

*Kamen v. Kemper Fin. Serv., Inc.,*
    500 U.S. 90, 111 S. Ct. 1711 (1991)......................................................................12

**Cases**                                                                                    **Page(s)**

*Koppel v. 4987 Corp.*,
    167 F.3d 125 (2nd Cir. 1999)................................................................................9

*Loudon v. Archer-Daniels-Midland Co.*,
    700 A.2d 135 (Del.Supr. 1997)......................................................................11, 14

*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998) ......................................................................................11

*Reo v. U.S. Postal Serv.*,
    98 F.3d 73 (3rd Cir. 1996) ................................................................................12

*Seinfeld v. Barrett*,
    2006 WL 890909 (D.Del. 2006) ................................................................ *passim*

*Shaev v. Saper*,
    320 F.3d 373 (3d Cir. 2003)....................................................................... *passim*

*St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*,
    2006 WL 2849783 (S.D.N.Y 2006)...............................................................13, 14

*Stroud v. Grace*,
    606 A.2d 75 (Del. 1992) ...................................................................................11

*United Paperworkers Int'l Union  v. Int'l Paper Co.*,
    985 F.2d 1190 (2d Cir. 1993).............................................................................9

*Vides v. Amelio*,
    265 F. Supp. 2d 273 (S.D.N.Y. 2003)...........................................................12, 13

*Virginia Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991).........................................................................................9

**Statutes**

The Treasury Regulation,
    26 C.F.R. §1.162-27(c)(2)...................................................................................1
    26 C.F.R. §1.162-27(e)(4)(i) and (v) ........................................................ *passim*

The Internal Revenue Code,
    26 U.S.C. §162(m) .................................................................................... *passim*
    26 U.S.C. §162(m)(3)(B) ....................................................................................1
    26 U.S.C. §162(m)(4)(C)(ii) ...........................................................................2, 9

**Statutes**                                                                                                    **Page(s)**

New Plan Benefits Table,
  17 C.F.R. §229.402(a)(3) (Dec. 29, 2006)..........................................................................1
  17 C.F.R. §240.14a-101 (Item 10(a)(1)(2)) ...........................................................3, 10, 11

Securities Exchange Act of 1934,
  15 U.S.C. §78n(a) ........................................................................................................6, 14

Fed.R.Civ.P. 23.1 ..............................................................................................................12


**Miscellaneous**

Daniel L. Goelzer, Disclosure of Preliminary Merger Negotiations - Truth or
  Consequences?, 46 Md. L. Rev. 974 (1987).......................................................................11

H.R. Conf. Rep. No. 103-213 .......................................................................................10, 11

Plaintiff, Insulators and Asbestos Workers Local No. 14 Pension Fund, by its attorneys, submits this brief in support of its motion for summary judgment in the above-captioned matter. This motion is supported by the declaration of A. Arnold Gershon, dated August 10, 2007 (the "Gershon Decl.").

## NATURE AND STAGE OF THE PROCEEDING

This is a stockholder's derivative action on behalf of 3M Company, a Delaware corporation ("3M" or the "Company"), against its directors, who disseminated a proxy statement that is materially incomplete, inadequate, false and misleading. Also defendants in this action are the "named executive officers." 26 U.S.C. §162(m)(3)(B); 17 C.F.R. §229.402(a)(3) (Dec. 29, 2006); 26 C.F.R. §1.162-27(c)(2). Plaintiff filed its complaint on June 28, 2007. Because there are no genuine issues of material fact, plaintiff now moves for summary judgment.

## SUMMARY OF ARGUMENT

1.      Executive compensation has been the focus of attention in the past couple of years, with complaints that in many instances such compensation has been excessive. Shareholders can be effective gatekeepers to control excessive executive compensation only where they are provided adequate information about executive compensation plans before approving them.

2.      The proxy statement at issue here solicits the 3M stockholders' approval of an incentive plan for its executive officers, called the 3M Executive Annual Incentive Plan (the "Plan"), under which 3M is to pay annual bonuses in cash or stock to its executive officers.

3.      The proxy statement contains the statement that, if the stockholders approve the Plan, such bonuses would be tax deductible under 26 U.S.C. §162(m). That section of the Internal Revenue Code disallows tax deductions for executive compensation above $1 million

1

unless such compensation is paid pursuant to a performance-based plan approved by shareholders.

4.      To assure that shareholder approval of an executive compensation plan is not a meaningless gesture, the applicable Treasury regulations prohibit a deduction if the compensation would be paid regardless of whether the stockholders approve the plan.

5.      At bar, the proxy statement tells the stockholders that the company intends to pay the compensation even if the plan is not approved.  Specifically, at page 27, 3M's 2007 proxy statement tells shareholders:

> If the proposal is not approved, the Committee would need to decide whether to implement the Annual Incentive Plan without stockholder approval, resume the previous [non deductible] Executive Profit Sharing Plan, or select another method of delivering short-term incentive compensation.

Gershon Decl. ¶ 5, Exh. 3.

6.      Such a statement is not only proof that the Company will violate the regulations, but it is coercive; after all, what rational shareholder would disapprove the plan where the only consequence of disapproval would be disallowance of the deduction.

7.      Thus, the proxy statement falsely represented that the compensation under the plan will be tax deductible.

8.      The Internal Revenue Code  and Treasury regulations also provide minimum standards of what must be disclosed, including the business criteria on which compensation is based and the maximum amount of the compensation that could be paid to any one employee. 26 U.S.C. §162(m)(4)(C)(ii); 26 C.F.R. §1.162-27(e)(4)(i) and (v). The 3M proxy statement omitted those disclosures.

9.      The regulations of the Securities & Exchange Commission also apply.  They require disclosure of the approximate number of participants in the plan and a tabular presentation of the amounts to be paid. 17 C.F.R §240.14a-101 (Item 10(a)). The 3M proxy statement omitted those disclosures.

10.     Pre-suit demand on the board is excused under Delaware law and federal policy.

11.     The proper remedy is an injunction against payments under the Plan, which will otherwise be made not later than March 15, 2008. Gershon Decl. ¶ 5, Exh. 3, p.26, ¶ 5.

## STATEMENT OF FACTS

For the annual meeting of 3M's stockholders on May 8, 2007, the individual defendants, except defendant Henkel, acting as the Company's board of directors, distributed a proxy statement that solicited the stockholders' proxies to be voted in favor of, *inter alia*, the election of defendant Henkel and the re-election of defendants Buckley, Alvarado, Coffman, Eskew, Farrell, Liddy, Morrison, Peters, and Ridgway to the board of directors and approval of the Plan. Gershon Decl., ¶ 5, Exhibit 3, pp.18-20.

The proxy statement represented that the proposed Plan would replace the old, non-deductible Executive Profit Sharing Plan, and that under the proposed Plan the named executive officers' compensation would be deductible by the Company for federal income tax purposes if the Plan is approved by the stockholders.  Gershon Decl. ¶ 5, Exhibit 3, at pp.25-27.  But if the stockholders were to fail to approve the Plan, the proxy statement said the Company might implement it without stockholder approval and make payments to the named executive officers anyway.  Or, the proxy statement represented, the Company might revive the old plan that the new Plan was supposed to have replaced, or the Company might select some other method of paying bonuses. Gershon Decl. ¶ 5, Exh. 3, p.27.

The defendants threatened and intended to make incentive payments even if the Company's stockholders were to disapprove the Plan. Not only was this threat coercive in its effect, but no vote of the stockholders would have made the incentive payments deductible. Because of the statement about the non-tax-deductible alternatives the Company would consider if the vote failed, the Company would not be entitled to the deduction even if the stockholder vote approved the Plan. 26 C.F.R. §1.162-27(e)(4)(i):

> Shareholder Approval General Rule…. The requirements of this paragraph (e)(4) are not satisfied if the compensation would be paid regardless of whether the material terms are approved by the shareholders.

Accordingly, the representation in the proxy statement that bonuses under the Plan would be deductible if the stockholders approve the Plan was materially false or misleading.

The proxy statement also omitted to disclose the maximum bonus that can be paid to any one employee or the formula used to calculate that bonus. It represented that the maximum was to be a percentage of 3M's adjusted net income, *i.e.*, GAAP net income "as adjusted to exclude special items." Gershon Decl. ¶ 5, Exh. 3, pp. 26, H-1, ¶ 2(a). But the proxy statement omitted to identify those "special items." The proxy statement also omitted to disclose the number of participants that are not "named executive officers." The proxy statement also omitted a New Plan Benefits Table. All these omitted facts were required to be disclosed by federal regulations.

A bonus paid under the Plan is to be based on three performance metrics: organic growth, operating income, and economic profit. Gershon Decl. ¶5, Exh. 3, p.34. The term "organic growth," however, is not defined. It is too vague and uncertain, both for tax purposes and for informing the 3M stockholders. "Operating income" is a line on 3M's consolidated statement of income. The defendants defined "economic profit" as "quarterly net operating income minus a charge for operating capital used by the business." *Id.* But they did not disclose

4

the amount of that charge or the method to be used to calculate it. The proxy statement also omitted to disclose the weight given to these metrics and how they are applied to calculate the amount of the bonus.

Omission of the foregoing disclosures from the proxy statement was a violation of express statutory and regulatory requirements, which require sufficient information to give stockholders the ability to assess whether it will be easy or hard for executive officers to achieve a large bonus, whether achievement of bonuses is substantially uncertain, and whether bonuses will be earned only for genuine accomplishments. For example, a shareholder could not determine from the proxy statement whether executive officers can achieve a bonus even if the Company's earnings decline from year to year. Since organic growth, economic profit, and adjusted net income have no GAAP definition, and since the committee seems to have unlimited discretion to define them, the proxy statement was materially false or misleading.

## ARGUMENT

### I. The Applicable Standard

The standard that applies to a motion for summary judgment is well settled. Rule 56(c) of the Federal Rules of Civil Procedure requires granting summary judgment where, as here, "there is no genuine issue of material fact for the jury to decide." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995). Once the moving party fulfills its burden of proving that no genuine issue of material fact exists, the nonmoving party must demonstrate "with specific facts showing that there is a genuine issue for trial." *In re Stone & Webster Inc.*, 2005 WL 1036556, *5 (D.Del. 2005) (internal quotations and citations omitted).

And "[t]he mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough

evidence to enable a jury reasonably to find for the nonmoving party on that issue." *In re Stone & Webster Inc., supra*, at *5; *Seinfeld v. Barrett*, 2006 WL 890909, at *4 (D.Del. 2006) (nonmoving party must do more than raise a "metaphysical doubt"). When a non-moving party fails to meet its burden of proof, "the moving party is entitled to judgment as a matter of law." *In re Stone & Webster Inc.*, 2005 WL 1036556, at *5 (*discussing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Although the issue of materiality for a claim under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78n(a), is a "mixed question of law and fact," when "the facts falsified, misrepresented or withheld are so obviously important to the shareholder's decision that reasonable minds cannot differ on the question of materiality and the underlying facts and inferences to be drawn from those facts are free from controversy, the question becomes one of law which may appropriately be decided by summary judgment." *Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761, 771 (3d Cir. 1976); *Seinfeld v. Barrett, supra*, at *6.

For the reasons set forth below, the proxy statement contains materially false or misleading statements and omissions, about which reasonable minds cannot differ. The motion for summary judgment should therefore be granted.

## II. The Proxy Statement Is Materially False or Misleading Since It States that Payments Under the Plan Are Deductible Under 26 U.S.C. §162(m) Even Though the Stockholders' Rejection of the Plan Will Not Stop the Payments

In *Shaev v. Saper*, 320 F.3d 373 (3d Cir. 2003), a case challenging the executive compensation plan disclosures in Datascope Corp.'s 2000 proxy statement, the Third Circuit held that the proxy statement was false when it represented that a bonus would be deductible under 26 U.S.C. §162(m) when the bonus would be paid anyway, even if the stockholders rejected it. There the proxy statement said that:

6

> In the event that the Management Incentive Plan is not approved by the
> shareholders of the Corporation, the Compensation Committee may grant
> Mr. Saper another bonus for fiscal year 2000, a portion of which may not
> be deducible under Section 162(m) of the Code.

Gershon Decl. ¶ 3, Exhibit 1, p.13 (A.53) (fourth sentence of the last paragraph).  In holding the

proxy statement disclosures to be inadequate, the court said:

> Payments of the Saper bonus, even if the shareholders voted against it,
> also precluded the deduction. The Regulations state that "[t]he material
> terms of the performance goal under which the compensation is to be paid
> must be disclosed to and subsequently approved by the shareholders of the
> publicly held corporation before the compensation is paid. The
> requirements of this paragraph ... are not satisfied if the compensation
> would be paid regardless of whether the material terms are approved by
> shareholders." 26 C.F.R. §1.162-27(e)(4)(i). The Board's threat
> undermined the deductibility of the bonus even if the shareholders
> approved it.

> The complaint accurately alleges that Datascope's Board made a
> materially false statement in the proxy statement when it stated that the
> bonus would be deductible if the shareholders approved it.  Regardless of
> the shareholders' approval, the bonus would not have been deductible
> under the Treasury Regulations, and the alleged false statement in the
> proxy statement is actionable.  [Footnote omitted.]

320 F.3d at 381.

Similarly, the Intel Corporation 2005 proxy statement, addressed by this court in *Seinfeld*

*v. Barrett*, stated:

> If our stockholders do not approve the EOIP at the annual meeting, we
> will terminate the EOIP plan, and we will not pay any incentives under
> this plan for the 2005 performance year.  However, we expect to make
> incentive payments to the executive officers in amounts similar to those
> that would have otherwise been paid under the EOIP; the difference is that
> we will lose a portion of the tax deductibility that would have otherwise
> been available to us.

Gershon Decl. ¶ 4, Exhibit 2, at p. 39, first and second sentences.  Citing the Third Circuit's

conclusion in *Shaev* that the prospect of paying bonuses in the face of stockholder rejection of

7

the Plan "undermined the deductibility of the bonus even if the shareholders approved it," this

court found the disclosures inadequate. *Seinfeld*, *supra*, at *5.

Here, the 3M Proxy Statement represented that, if the Plan is approved by the

stockholders, payments under the Plan will be deductible for federal income tax purposes. The

proxy statement also stated that:

> If the proposal is not approved, the Committee would need to decide
> whether to implement the Annual Incentive Plan without stockholder
> approval, resume the previous Executive Profit Sharing Plan, or select
> another method of delivering short-term incentive compensations.

Gershon Decl. ¶ 5, Exhibit 3, p. 27.

The 3M Proxy Statement thereby informed the stockholders that the compensation

committee, one way or another, would pay short term incentive compensation no matter what the

stockholders did.  If the stockholders rejected the Plan, the committee "would" consider

implementing the rejected Plan, even though the Plan by its terms is subject to approval "by a

majority vote of the Company's stockholders."  Gershon Decl. ¶5, Exh. 3 at p.26.  Or the

compensation committee "would" consider reviving the "previous [non deductible] Executive

Profit Sharing Plan" that the new Plan was supposed to "replace [  ]." *Id*.  Or the compensation

committee "would need to decide whether to … select another method."  The Proxy Statement

did not say "may" as in *Shaev v. Saper*, *supra*, or "expect" as in *Seinfeld v. Barrett*, *supra*, but it

said that the committee "would."  The only uncertainty was **how** it would overrule a negative

vote of the stockholders. The language in the 3M Proxy Statement goes far beyond the language

in the Datascope and Intel proxy statements that the Third Circuit and this court, respectively,

recognized was a threat to overrule a rejection by the stockholders. *Shaev*, *supra*, 320 F.3d at

381; *Seinfeld*, *supra*, at *5.

8

In *Seinfeld v. Barrett* this court denied a motion for summary judgment, in part on grounds of materiality, because the plaintiff there had not shown that deductible compensation was important at Intel.  Indeed, Intel did not have a policy that all compensation be tax deductible, as this court observed. 2006 WL 890909, at *5.  Gershon Decl. ¶ 4, Exh. 2, at pp. 16-17, 39.  But 3M, by contrast, does emphasize the importance of tax deductible compensation.  The Proxy Statement said, "The Committee continues to emphasize performance-based compensation for executives and thus minimize the effect of Section 162(m)."  Gershon Decl. ¶ 5, Exh. 3, at p. 39.

Since the proxy statement represents that tax deductible compensation is important to 3M, the deductibility of bonuses is a material fact.  *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1098 n.7 (1991) ("Once the proxy statement purported to disclose the factors considered ..., there was an obligation to portray them accurately."); *Koppel v. 4987 Corp.*, 167 F.3d 125, 131 (2nd Cir. 1999) (the same, in defining materiality); *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1198, 1201 (2d Cir. 1993) (summary judgment affirmed where the proxy statement treated the subject of the vote, *i.e.*, environmental protection, as important).  In the case at bar, the Company itself made the misrepresentation material.

## III.    The Proxy Statement Is Materially Misleading, Because It Omits the Material Terms of the Plan

The Internal Revenue Code, 26 U.S.C. §162(m)(4)(C)(ii), provides that for the compensation to be deductible ... the material terms under which the remuneration is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of such remuneration, ... The Treasury Regulations, 26 C.F.R. §1.162-27(e)(4)(i), require the disclosure to shareholders to include a "description of the business criteria on which the performance goal is based; and either the

maximum amount of compensation that could be paid to any employee or the formula used to calculate [it]."

The SEC regulations, 17 C.F.R. §240.14a-101 (Item 10(a)(1)), require that the proxy statement "indicate the approximate number of persons in each such class" of eligible participants. The SEC regulations also require a disclosure, "in tabular format," of "the benefits or amounts that will be received by or allocated to each of the [named executive officers and other participants in the Plan]." 17 C.F.R. §240.14a-101 (Item 10(a)(2)).

The Third Circuit also held in *Shaev*, 320 F.3d at 383:

> [T]he material terms of the incentive plan and general performance goals on which the executive's compensation is based must, at a *minimum*, be disclosed. This position is supported by the Legislative History of the IRC §162(m), which states:
>
>> In order to meet the shareholder approval requirement, the material terms under which the compensation is to be paid must be disclosed ... It is intended that not all the details of a plan (or agreement) need be disclosed in all cases ... To the extent consistent with [the SEC] rules, however, disclosure should be as *specific* as possible...

*See* H.R. Conf. Rep. No. 103-213, at 587-88. (italics added).

The proxy statement here is not "as specific as possible." *Id*. It did not disclose the maximum bonus or the approximate number of eligible participants. It did not include the definitions of the performance metrics. It did not explain how net income was to be "adjusted." And it did not have a New Plan Benefits Table. Therefore, material terms of the Plan and disclosures required by the statute and regulations were omitted from the proxy statement.

In *Seinfeld*, *supra*, at *4-*6, a case addressing the application to the same statute and regulations to a proxy statement, this court held that a stockholder would be entitled to summary

judgment if the evidence revealed no genuine issue about whether the proxy statement omitted material facts.[1]

The Third Circuit has held that "[d]isclosures mandated by law are presumably material." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 641 n.17 (3d Cir. 1989). Where the regulatory disclosure requirement is absolute, "[m]ateriality is not an issue." Daniel L. Goelzer, *Disclosure of Preliminary Merger Negotiations – Truth or Consequences?*, 46 MD.L.REV. 974, 982 (1987). Treasury and SEC regulations expressly require the proxy statement to disclose the omitted facts, *e.g.*, the maximum bonus, 26 C.F.R. §1.162-27(e)(4)(i); the approximate number of eligible participants, 17 C.F.R. §240.14a-101 (Item 10(a)(1)); and a New Plan Benefits Table, 17 C.F.R. §240.14a-101 (Item 10(a)(2)). Moreover, the statute itself, 26 U.S.C. §162(m), requires, as a matter of law, greater specificity than is provided by the proxy statement's vague references to the performance metrics "organic growth" and "economic profit" and the definition of adjusted net income as net income "as adjusted to exclude special items." *Shaev*, *supra*, 320 F.3d at 383 (citing H.R. Conf. Rep. No. 103-213 at 587-88 (1992)).

## IV.    The Proxy Statement Also Violates Delaware Law

Delaware law also provides relief upon these facts under the fiduciary duty of disclosure attached to proxy statements. *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 137, 143 (Del.Supr. 1997); *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992); *see Malone v. Brincat*, 722 A.2d 5, 9 (Del. 1998).

---

[1] While this Court denied plaintiff's motion for summary judgment there, it did so primarily because the proxy statement in that case did disclose the maximum bonus for each executive and the formula for calculating it. Thus, this Court said that it could not "determine as a matter of law whether there were other material terms requiring inclusion." *Id*. at *6. Plaintiff submits that the facts at bar are different and that a different result should obtain.

## V.    Pre-Suit Demand Is Excused

In this stockholders' derivative action in federal court, Fed.R.Civ.P. 23.1 provides the

pleading standards for the pre-suit demand allegations, and state law ordinarily, with exceptions,

governs the substance of the requirement to make demand. *Kamen v. Kemper Fin. Serv., Inc.,*

500 U.S. 90, 98-99, 111 S.Ct. 1711, 1717 (1991); *Blasband v. Rales,* 971 F.2d 1034, 1047 (3rd

Cir. 1992). The state's law that applies is the state of incorporation. *Kamen, supra,* 500 U.S. at

108-09; *Blasband v. Rales, supra,* which at bar is Delaware.

The exception in this area, as in other areas where federal courts apply state law, is that

federal courts do not apply state law where it would impair federal policy. *Kamen, supra,* 500

U.S. at 98; *Reo v. U.S. Postal Serv.,* 98 F.3d 73, 76 (3rd Cir. 1996).

In *Vides v. Amelio,* 265 F.Supp.2d 273, 275-76 (S.D.N.Y. 2003), the court held that,

under Delaware law and federal policy, demand was excused in a stockholder's derivative action

where the complaint alleged misstatements in and omissions from a proxy statement. The *Vides*

court reviewed the Delaware rule that proper disclosure does not concern the "management of

business and affairs" of a corporation and that disclosure is not an issue "inherently of the kind

which courts are ill suited to treat on their merits," *citing In re Anderson Clayton S'holder Litig.,*

519 A.2d 669, 675 (Del.Ch. 1986). *Vides* also held that false and misleading disclosures are not

protected by the business judgment rule, *citing In re Tri-Star Pictures, Inc. Litig.,* 1990 WL

82734, at *8 (Del.Ch. 1990). As the court held, in *Blasband v. Rales, supra,* 971 F.2d at 1048, if

the board's conduct is not protected by the business judgment rule, the pre-suit demand is

excused.

The *Vides* court reviewed federal policy, *citing Galef v. Alexander,* 615 F.2d 51, 63-64

(2nd Cir. 1980), and observed that the business judgment rule cannot be invoked by directors

who are sued in a stockholder's "derivative action for providing inadequate information in

connection with a proxy solicitation." 265 F.Supp.2d at 276. *See also In re Westinghouse Sec.

Lit.*, 832 F.Supp. 989, 998 (W.D. Pa. 1993) (court held that it would be a misapplication of the

business judgment rule to allow a demand defense to a stockholder's derivative action alleging

that the directors had made inadequate disclosures in a proxy statement, and this is the rule

"regardless of their independence").

In *Seinfeld v. Barrett*, *supra*, at *3, this court held that demand was excused when the

complaint alleged that a proxy statement misrepresented the deductibility of bonuses and omitted

such material terms as the variables used and the amount of the bonuses. This Court held that

"[t]hese allegations could raise issues as to the honesty and good faith of the Directors." *Id.*

In *St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*, 2006 WL 2849783 at *5

(S.D.N.Y 2006), the court rejected *Vides*, holding that, although a board's decision to distribute a

materially false proxy statement is not protected by the business judgment rule, still, pre-suit

demand is required in a stockholder's derivative action to redress the corporate injury resulting

from that false proxy statement. But *St Clair* is inconsistent with Delaware law, which excuses

demand when the action seeks redress for a board's conduct that is not protected by the business

judgment rule. *Brehm v. Eisner*, 746 A.2d 244, 256 (Del.Supr. 2000):

> The test of demand futility is a two-fold test under *Aronson* and its
> progeny. The first prong of the futility rubric is "whether, under the
> particularized facts alleged, a reasonable doubt is created that ... the
> directors are disinterested and independent." The second prong is whether
> the pleading creates a reasonable doubt that "the challenged transaction
> was otherwise the product of a valid exercise of business judgment."
> These prongs are in the disjunctive. Therefore, if either prong is satisfied,
> demand is excused. [Footnotes omitted.]

The *St. Clair* court did not state the aforesaid Delaware rule, however, and instead held that the

Chancery Court's conclusion that demand is excused in a proxy statement case, *In re Tri-Star*

*Pictures, Inc. Litig.*, 1990 WL 82734 at *8 (Del.Ch. 1990), was "unwarranted." *St. Clair, supra*, at *4. Nor did the *St. Clair* court cite *Seinfeld v. Barrett, supra*, at *3, or *In re Westinghouse Sec. Lit., supra.*

Two courts have followed *St. Clair* on the demand question. *In re CNET Networks, Inc.*, 483 F.Supp.2d 947, 966 (N.D. Cal. 2007), and *In re Computer Sciences Corp. Deriv. Litig.*, 2007 WL 1321715 at *4 n.4 (C.D. Cal. 2007). Neither court addressed the exceptions to the demand rule under Delaware law, and neither court cited *Seinfeld v. Barrett, supra*, at *3, or *In re Westinghouse Sec. Lit., supra.* Plaintiff submits that this court should reject *St. Clair, CNET,* and *Computer Sciences* as incorrect under Delaware law.

Thus, based on the foregoing controlling case law, no pre-suit demand is needed here. Both Delaware law and federal policy excuse pre-suit demand in this case.

## VI.    The Court Should Enjoin Payments Under the Plan

Enjoining payments under the Plan is the preferred remedy under both §14(a) of the Exchange Act, 15 U.S.C. §78n(a), *Diceon Electronics, Inc. v. Calvary Partners, L.P.*, 772 F.Supp. 859, 866 (D. Del. 1991), and Delaware law. *Loudon v. Archer-Daniels-Midland Co.*, *supra*, 700 A.2d at 138. Payments under the Plan will not be made until the performance period ends on December 31, 2007, and the committee learns the results. Gershon Decl. ¶ 5, Exh. 3, p.26, ¶ 5. It will occur not later than March 15, 2008, but might occur sooner. Gershon Decl. ¶ 5, Exh. 3, p.26, ¶ 5.

An injunction will not irreparably interfere with 3M's compensation procedures. Should this court grant the injunction, the directors could re-solicit stockholder approval in March 2008 with a proxy statement that does not violate 15 U.S.C. §78n(a) and Delaware law.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully submits that the court should grant its

motion for summary judgment and enjoin payments under the Plan.

Dated:  August 21, 2007

RIGRODSKY & LONG, P.A.

By: _____
Seth D. Rigrodsky  (#3147)
sdr@rigrodskylong.com
Brian D. Long (#4347)
bdl@rigrodskylong.com
919 North Market Street, Suite 980
Wilmington, DE 19801
(302) 295-5310

*Attorneys for Plaintiff*

Of Counsel:

Barrack, Rodos & Bacine
Alexander Arnold Gershon
Regina M. Calcaterra
Gloria Kui
1350 Broadway, Suite 1001
New York, New York 10018
(212) 688-0782

Barrack, Rodos & Bacine
Daniel E. Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, Pennsylvania 19103
(215) 963-0600

## <u>CERTIFICATE OF SERVICE</u>

I, Brian D. Long, hereby certify that on this 21st day of August, 2007, that I have caused

foregoing Brief In Support of Plaintiff's Motion for Summary Judgment to be filed via the

CM/ECF System and served via e-mail upon the following counsel.

Daniel A. Dresibach, Esq.
Steven J. Fineman, Esq.
Geoffrey G. Grivner, Esq.
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

*/s/ Brian D. Long*
Brian D. Long, Esq. (#4347)
