## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INSULATORS AND ASBESTOS
WORKERS LOCAL NO. 14 PENSION
FUND, Derivatively on Behalf of 3M
COMPANY,

        Plaintiff,

v.

GEORGE W. BUCKLEY, LINDA G.
ALVARADO, VANCE D. COFFMAN,
MICHAEL L. ESKEW, W. JAMES
FARRELL, HERBERT L. HENKEL,
EDWARD M. LIDDY, ROBERT S.
MORRISON, AULANA L. PETERS,
ROZANNE L. RIDGEWAY, PATRICK D.
CAMPBELL, MOE S. NOZARI,
FREDERICK J. PALENSKY, RICHARD
F. ZIEGLER,

        Defendants,

and

3M COMPANY, a Delaware Corporation,

        Nominal Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 07-416-GMS

**JURY TRIAL DEMANDED**

## 3M AND THE INDEPENDENT DIRECTORS' OPENING BRIEF
## IN SUPPORT OF THEIR MOTION TO DISMISS WITH PREJUDICE THE
## DERIVATIVE COMPLAINT FOR FAILURE TO MAKE A RULE 23.1 DEMAND

OF COUNSEL:
Paul H. Dawes
Latham & Watkins LLP
140 Scott Drive
Menlo Park, California 94025
(650) 328-4600

J. Christian Word
Kevin H. Metz
Latham & Watkins LLP
555 Eleventh St. NW
Washington, DC 20004
(202) 637-2200

Daniel A. Dreisbach (#2583)
Steven J. Fineman (#4025)
Geoffrey G. Grivner (#4711)
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
Dreisbach@rlf.com
Fineman@rlf.com
Grivner@rlf.com

Attorneys for 3M Company, Linda G. Alvarado, Vance D. Coffman, Michael L. Eskew, W. James Farrell, Herbert L. Henkel, Edward M. Liddy, Robert S. Morrison, Aulana L. Peters, and Rozanne L. Ridgway

Dated:  September 10, 2007

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDING ......................................................... 3

SUMMARY OF ARGUMENT ....................................................................................... 3

STATEMENT OF FACTS ............................................................................................... 4

ARGUMENT ................................................................................................................... 9

I.      PLAINTIFF VIOLATED RULE 23.1 BY FAILING TO PLEAD
        PARTICULARIZED FACTS JUSTIFYING WHY ITS FAILURE
        TO MAKE A PRE-SUIT DEMAND IS EXCUSED ........................................... 9

II.     PLAINTIFF IS WRONG IN ITS CONTENTION THAT THE
        COMPLAINT IS EXEMPT FROM THE DEMAND REQUIREMENT
        OF RULE 23.1 ................................................................................................... 12

III.    PLAINTIFF HAS NOT PLED ANY FACTS TO EXCUSE DEMAND
        UNDER ARONSON ........................................................................................... 14

        A.    The Complaint Does Not Plead Particular Facts Establishing That
              A Majority Of The Board Faces A Substantial Likelihood Of
              Personal Liability .................................................................................... 15

        B.    Plaintiff Failed To Plead Particularized Facts Raising A Reasonable
              Doubt That The Board's Decision Regarding The Proxy Statement's
              Disclosures Is Not Entitled To The Business Judgment Rule
              Presumptions ........................................................................................... 18

CONCLUSION .............................................................................................................. 23

i

# TABLE OF AUTHORITIES

## CASES

*Aronson v. Lewis,*
    473 A.2d 805 (Del. 1984) ............................................................................................ *passim*

*Blasband v. Rales,*
    971 F.2d 1034 (3d Cir. 1992) ..........................................................................10, 11, 16

*In re CNET Networks, Inc. S'holder Deriv. Litig.,*
    483 F. Supp. 2d 947 (N.D. Cal. 2007) ........................................................................ *passim*

*In re Computer Sciences Corp. Deriv. Litig.,*
    C.A. No.s. 06-06288, 06-05356, and 06-06512, 2007 WL 1321715 (C.D. Cal.
    Mar. 26, 2007) ..............................................................................................12, 13, 18

*In re Computer Sciences Corp. Deriv. Litig.,*
    C.A. Nos. 06-5288, 06-6512, and 06-5356, 2007 WL 2274951 (C.D. Cal. July 24,
    2007) ..............................................................................................................................18

*In re Fed. Nat. Mortg. Ass's Sec. Deriv. ERISA Litig.,*
    C.A. No. 04-1783, 2007 WL. 1577872 (D.D.C. May 31, 2007) ........................................16

*Fink v. Komansky,*
    C.A. No. 03-388, 2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004) ........................................21

*Halpert Enterps. Inc. v. Harrison,*
    C.A. No. 06-2331, 2007 WL  486561 (S.D.N.Y. Feb. 14, 2007) ................................12, 13

*Halpert Enters., Inc. v. Harrison,*
    362 F. Supp. 2d 426 (S.D.N.Y 2005) ..............................................................................13

*Kamen v. Kemper Fin. Servs., Inc.,*
    500 U.S. 90 (1991) ........................................................................................................9, 10

*Kanter v. Barella,*
    489 F.3d 170 (3d Cir. 2007) ........................................................................................12, 15

*Laties v. Wise,*
    C.A. No. 1280-N, 2005 WL 3501709 (Del. Ch. Dec. 14, 2005) ........................................16

*In re Merck & Co. Inc. Sec Deriv. & ERISA Litig.,*
    C.A. No. 06-2911, 2007 WL 2049017 (3d Cir. July 18, 2007) ........................................15

ii

*In re Openwave Sys. Inc. S'holder Deriv. Litig.*,
    C.A. No. 06-033468, 2007 WL 1456039 (N.D. Cal. May 17, 2007) .............................21, 22

*Rosenberg v. XM Ventures*,
    129 F. Supp. 2d 681 (D. Del. 2001)................................................................................4

*Rudolph v. Cummins*,
    C.A. No. H-06-2671, 2007 WL 1189632 (S.D. Tex Apr. 19, 2007) ..................................12

*Ryan v. Gifford*,
    918 A.2d 341 (Del Ch. 2007)............................................................................... *passim*

*In re SFBC Int'l, Inc. Secs. & Deriv. Litig.*,
    C.A. No. 06-165-SRC, 2007 WL. 2127213 (D. N.J. July 25, 2007) ...................................7

*Seinfeld v. Barrett*, C.A. 05-298-JJF,
    2006 WL. 890909 (D. Del. Mar. 31, 2006) ............................................................ *passim*

*Seminaris v. Landa*,
    662 A.2d 1350 (Del. Ch. 1995)...................................................................................15

*Shaev v. Saper*,
    320 F.3d 373 (3d Cir. 2003)................................................................................12, 13

*St. Clair Shores Gen. Employees Retirement Sys. v. Eibeler*,
    C.A. No. 06-688, 2006 WL 2849783 (S.D.N.Y. Oct. 4, 2006) ....................................12, 13

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ..........................................................................................22

*In re Tyson Foods, Inc. Consol S'holder Litig.*,
    919 A.2d 563 (Del. Ch. 2007)....................................................................................13

*Vides v. Amelio*,
    265 F. Supp. 2d 273 (S.D.N.Y. 2003)..........................................................................13

*In re Walt Disney Co. Deriv. Litig.*,
    825 A.2d 275 (Del. Ch. 2003)...........................................................................12, 19, 22

*In re Walt Disney Deriv. Litig*,
    906 A.2d 27 (Del. 2006) .......................................................................................18, 20

RLF1-3199279-1

## STATUTES

*8 Del. C.* § 102(b)(7)............................................................................................................16

8 *Del. C.* § 141(e)..............................................................................................................19

17 C.F.R. § 240.14a-9.........................................................................................................3

Fed. R. Civ. P. 23.1 ....................................................................................................*passim*

15 U.S.C. §78n(a)),..............................................................................................................3

RLF1-3199279-1

Nominal Defendant 3M Company ("3M" or the "Company") and Linda G. Alvarado, Vance D. Coffman, Michael L. Eskew, W. James Farrell, Herbert L. Henkel, Edward M. Liddy, Robert S. Morrison, Aulana L. Peters, and Rozanne L. Ridgeway (the "Independent Directors") respectfully submit this Opening Brief in support of their Motion to Dismiss with Prejudice the Complaint for Failure to Make A Rule 23.1 Demand. The Motion is pursuant to the substantive requirements of FED. R. CIV. P. 23.1 and based upon the controlling Delaware law.

## INTRODUCTION

This is a bizarre shareholder derivative suit. In the typical derivative case against a board of directors, a shareholder claims that the board of directors acted in a manner that injured the company, alleges that the directors were reckless or disloyal, and seeks to recover for the alleged harm to the entity. That is not Plaintiff's theory of this case. Rather, it claims that the 3M Board of Directors (the "Board") acted with an intention to obtain a legal benefit for 3M (a tax deduction) and does not allege that the Directors' behavior was reckless, or self interested, or dishonest, or wasteful. What is more, Plaintiff seeks to prevent 3M from realizing the benefit of a tax deduction that is available by virtue of the Board's conduct.

Specifically, the Complaint concerns a performance-based compensation plan (*i.e.*, Executive Annual Incentive Plan (the "Plan")). Earlier this year, the Compensation Committee of the 3M Board adopted the Plan subject to shareholder approval at the Company's 2007 Annual Meeting. The Board then included the Plan as a proposal in the Proxy Statement sent to shareholders to solicit their vote and recommended that shareholders vote for approval of the Plan. The 3M shareholders overwhelmingly approved the Plan.

The intention of the Compensation Committee, the Board, and the shareholders was to qualify the Company for an income tax deduction attendant to certain compensation paid pursuant to the Plan. Plaintiff is attempting to prohibit the Company from implementing that

program, though it does not challenge the planned compensation *per se* as impermissible or wasteful. Indeed, it cannot. So it employs a sidestep strategy of contending that the Proxy Statement disclosures were materially false and misleading. This perplexing approach leads one immediately to doubt that Plaintiff's lawsuit is in 3M's or its shareholders' best interests.

In any event, it is 3M's Board of Directors that the law entrusts with the authority to decide whether (and when) litigation such as this is in the Company's best interest; not Plaintiff or any other shareholder. FED. R. CIV. P. 23.1 requires that Plaintiff first make a demand upon the Board of Directors before bringing a lawsuit to enforce a right of the Company. Plaintiff chose not to and, instead, waited until after the shareholders' vote to file this lawsuit. This attempt to usurp the Board's authority is prohibited by Rule 23.1 and substantive Delaware jurisprudence unless Plaintiff pleads in the Complaint particularized facts showing that the Board (*i.e.*, a majority of the Directors) is disabled from exercising its legal authority. The Complaint woefully fails to meet this high hurdle under the well-settled *Aronson* test, discussed within. Indeed, the Complaint pleads virtually no facts about the Directors or their conduct, much less plead facts with the specificity required to divest the Board of its right to respond to any perceived Proxy Statement deficiencies in light of a proper demand.

Plaintiff seeks to circumvent its demand burden by arguing that it need not comply with Rule 23.1 at all. But that position is contrary to the legion of federal and Delaware cases that require shareholders to plead demand futility with specificity. Indeed, shareholders (including some represented by Plaintiff's counsel) recently have made this very argument that Rule 23.1 is inapplicable in similar cases and consistently have met defeat.

As explained below, Rule 23.1 imposes significant and meaningful prerequisites – rooted in corporate policy and judicial economy – to derivative shareholder suits. Plaintiff is obligated,

2

but has failed, to meet them. For that reason, 3M and the Independent Directors respectfully request that the Complaint be dismissed with prejudice.

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff filed this putative derivative action nearly two months after 3M's annual meeting of shareholders at which shareholders voted overwhelmingly to approve the Plan to enable the Company to qualify for substantial tax benefits. The Complaint names as defendants the 10 members of 3M's Board and five senior executive officers. It alleges that the Board violated Section 14(a) of the Securities Exchange Act (15 U.S.C. §78n(a)), Rule 14a-9 promulgated thereunder (17 C.F.R. § 240.14a-9), and Delaware law, by approving the filing with the SEC and publication to shareholders of a Proxy Statement that allegedly was materially false and misleading in its description of the Plan. The Complaint asks the Court to void the shareholders' vote in favor of the Plan, to terminate the Plan and enjoin payments thereunder, to void the election of the Board of Directors, to provide an equitable accounting of losses the Company has sustained, and, of course, to award attorneys' fees.

Plaintiff did not make a pre-suit demand on the Board, thereby depriving the Directors of an opportunity to evaluate Plaintiff's claims prior to instituting this action. Compl. ¶ 9. Instead, Plaintiff alleges that the Rule 23.1 demand requirement does not apply to suits involving a board's approval of a proxy statement soliciting shareholder approval. Compl. ¶ 13. In the alternative, Plaintiff asserts that demand should be excused because "a majority of the board is either interested in the transactions and events alleged [in the Complaint], or it otherwise lacks independence." Compl. ¶¶ 10-11. Plaintiff is wrong.

## SUMMARY OF ARGUMENT

1.      FED. R. CIV. P. 23.1 requires Plaintiff to plead particularized facts establishing that its failure to make a pre-suit demand on 3M's Board of Directors is excused.

3

2.    Plaintiff's argument that it is exempt from the Rule 23.1 requirement is wrong and

consistently has been rejected by federal courts in similar suits.

3.    Plaintiff's Complaint lacks any facts, much less particularized facts, establishing

that pre-suit demand is excused.

## STATEMENT OF FACTS[1]

### A.    The Company and the Board of Directors

Founded in 1902, 3M is an American icon that operates a diversified global business; it

innovates technology, manufactures, and markets a wide variety of products and services.

Formerly known as Minnesota Mining and Manufacturing Company, 3M has its headquarters in

St. Paul, Minnesota, is incorporated under Delaware law, and its securities are traded on the New

York Stock Exchange under the symbol MMM.

3M is governed by a 10-member elected Board of Directors that is comprised of nine

independent, non-management directors.[2]  Notice of Annual Meeting and Proxy Statement of 3M

Company, filed March 26, 2007 (hereafter "Proxy Statement"), at 7-8.[3]  The Directors are

seasoned executives and professionals from the very highest echelon of American business,

including eight current or former CEOs, a former Commissioner of the Securities and Exchange

Commission, and a former U.S. Ambassador.  Combined, the Directors serve on more than two

dozen other public company boards.  *Id.* at 19-20.

---

[1] 3M disputes many of the factual allegations in the Complaint but takes as true the well-pleaded allegations solely for purposes of asserting this motion.

[2] Of the 10-member Board, the Chairman and CEO George W. Buckley is the only officer of the Company.

[3] On a motion to dismiss, the Court may consider all documents "integral or explicitly relied upon in the complaint" (such as the Proxy Statement here) without converting the motion into one for summary judgment.  *See Rosenberg v. XM Ventures*, 129 F. Supp. 2d 681, 685 (D. Del. 2001) ("'document[s] integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" (*quoting In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997))

### B.     The 2007 Executive Annual Incentive Plan

3M's Compensation Committee is comprised of five of the Board's nine Independent Directors. This Committee is charged with reviewing and approving the compensation plans for 3M's employees including its senior executives. In fulfilling this charge, the Compensation Committee aspires to "provide appropriate motivation for corporate performance and increased shareholder value." Compensation Committee Charter, attached as Exhibit D to the Proxy Statement at D-1-2. To that end, the Committee previously established and implemented short- and long-term incentive, stock ownership, and deferred compensation plans. Prior to 2007, the Company provided short-term incentive compensation to its executives through profit sharing plans, which tied incentive compensation to quarterly financial results. Proxy Statement at 35.

The Compensation Committee is cognizant of the tax advantages (in the form of expense deductions from taxable income) to be obtained by adopting "performance-based compensation for purposes of Section 162(m) of the Internal Revenue Code." Proxy Statement at 40. Generally, the tax code provided that companies may not deduct for federal income tax purposes compensation paid to the CEO, and the four highest paid executive officers (the "Named Executive Officers") in excess of $1 million.[4] Section 162(m), however, permits companies to deduct compensation over the limit if paid pursuant to a qualified performance-based plan so long as the material terms under which such compensation will be paid, including the performance goals, are disclosed to and approved by shareholders. 3M's Board and its

---

[4] On June 18, 2007, the Office of Division Counsel/Associate Chief Counsel (Tax Exempt & Government Entities) of the U.S. Treasury Department reconciled Section 162(m) with a change in the SEC's proxy reporting requirements by clarifying that the persons subject to Section 162(m) are the company's chief executive officer and the three most highly compensated officers other than the chief executive officer and the chief financial officer. IRS Notice 2007-49, I.R.B. 2007-25 (June 18, 2007). Prior to this clarification, it was unclear whether the chief financial officer—who would always be a Named Executive Officer—was subject to Section 162(m).

shareholders historically have taken advantage of this provision to obtain tax benefits for the Company. For example, in the same Proxy Statement proposing the Plan, the Board disclosed and sought shareholder approval for the amended performance criteria for one of the Company's long-term incentive compensation plans, the Performance Unit Plan. *Id.* at 27. The amendment was overwhelmingly approved by shareholders. Similarly, in connection with the 2002 annual meeting, the Board disclosed and recommended and the shareholders overwhelmingly approved the revised performance criteria under the Company's Executive Profit Sharing Plan, which the Plan replaced this year. *See* Notice of Annual Meeting and Proxy Statement, filed March 29, 2002, at 17-18.

In 2006, the Compensation Committee undertook a "comprehensive review of 3M's short-term and long-term incentive compensation plans." *Id.* at 34. As part of this review, the Committee relied upon its independent compensation consultant to assist in evaluating various compensation plans and options. *Id.* at 33-34. The Committee's compensation expert attended its meetings and "provided significant assistance and advice during an extensive review of the Company's short-term and long-term incentive compensation plans." Proxy Statement at 33.

Based on the information collected, the Committee, in consultation with its independent consultant, designed and adopted on February 11, 2007, the Plan that, if approved by shareholders, would replace the previous quarterly Executive Profit Sharing Plan. The new annual plan was part of a strategy to replace "quarterly profit sharing as its primary vehicle for delivering short-term incentive compensation to employees with annual incentive compensation." *Id.* at 25.[5] As the Compensation Committee advised shareholders, "[t]he

---

[5] The Committee also decided to replace 3M's current quarterly profit sharing plans with a new annual incentive plan for employees who do not participate in the Plan. Proxy Statement

6

purposes of the [Plan] are to attract and retain highly qualified individuals to serve as executive officers of the Company, to focus their attention on achieving certain business objectives established for the Company and its business units, and to provide these individuals with incentive compensation that is designed to qualify as performance-based compensation for purposes of Section 162(m) of the Internal Revenue Code." *Id.* at 25.

The Plan appropriately was designed to take advantage of the tax deductions available under the Internal Revenue Code without reduction due to the limit established by Section 162(m). Consistent with the specific criteria established by Section 162(m), the Plan authorizes maximum performance-based compensation to be paid to the "Named Executive Officers" based upon a fixed percentage of the Company's "adjusted net income." Proxy Statement at 25-26.[6] And, as is common with this type of Section 162(m) plan, the Committee retained authority to pay amounts less than the maximum. Proxy Statement at 26.

### C.    The Proxy Statement

Pursuant to its Charter, the Compensation Committee has the sole authority to approve incentive compensation plans and the annual incentive compensation payable under such plans to the Company's executives, except for the annual incentive compensation of the Chief Executive Officer for which full Board approval is required. Proxy Statement at D-1. Thus, shareholder approval was not required for the adoption of the Plan. However, Section 162(m) conditions the potential tax deductibility of the Plan payments to the Named Executive Officers (to the extent the payments would exceed the compensation limit) on, *inter alia*, shareholder approval of the

---

at 35. Compensation paid under this plan qualifies for a tax deduction without shareholder approval.

[6] The Plan also provides performance-based compensation for "those other senior executives whose compensation is approved by the Compensation Committee." However, compensation paid to these employees is tax deductible without complying with the terms of Section 162(m).

7

material terms under which the Plan payments will be made, including the performance goals.
Accordingly, Proposal No. 5 in the Proxy Statement sought the requisite shareholder approval.

The Proxy Statement described in detail the Plan and disclosed its material terms, including the formula to determine the maximum annual incentive payment payable and the Plan participants. *Id.* at 25-26. The Proxy Statement also explained that the Company will be entitled to deduct for federal income tax purposes the payment made under the Plan to those executives covered by the Section 162(m) limit if the Plan was approved by shareholders and otherwise complied with the requirements of Section 162(m). *Id.* at 25-26.

The Board recommended that shareholders approve the Plan and its material terms. However, the Board explained that in the event shareholders did not do so, the Committee retained its authority to determine appropriate executive compensation:

> If the proposal is not approved [by the shareholders] the Committee would need to decide whether to implement the Annual Incentive Plan without stockholder approval, resume the previous Executive Profit Sharing Plan, or select another method of delivering short-term incentive compensation.

Proxy Statement at 27.

At the annual meeting, shareholders accepted the recommendation of the Board and approved the Plan, thus making the Plan effective as of January 1, 2007.

### D.     Plaintiff's Complaint

Plaintiff does not claim that the performance-based compensation under the Plan is wasteful or unreasonable or will not be faithfully earned and paid. Nor does Plaintiff claim that compliance with Section 162(m) in order to obtain the tax deduction is not beneficial to 3M. Instead, Plaintiff claims that the shareholder vote in favor of the Plan is invalid because—the argument goes—the Proxy Statement contained a material misrepresentation and material omissions and thus (assertedly) violated Section 14(a) and Delaware law. Specifically, Plaintiff

8

claims—based solely on its own misinterpretation of the law and misstatement of the disclosures—that the Proxy Statement mislead shareholders by supposedly stating that shareholder approval would provide a tax deduction to the Company when the Plan would not in fact qualify for the exemption under 162(m), and otherwise failed to disclose information required by Section 162(m) and Securities Exchange Commission regulations. Compl. ¶¶ 22-29.

Plaintiff received the Proxy Statement before the annual meeting and had sufficient time (more than five weeks) to object, demand or even attempt to enjoin the vote on the basis of the claimed Proxy Statement deficiencies. Yet only now Plaintiff seeks retroactively to set aside the shareholders' vote, and to terminate the plan, and to enjoin further payments under it, and (were that not enough unjustified havoc) to nullify the election of the directors, and to be paid its attorneys' fees. Compl. ¶ 10.

This entire suit was improperly filed given Plaintiff's failure to make a demand and the complete absence of a legally sufficient excuse for the failure to do so. For this reason, Plaintiff's derivative suit should be dismissed with prejudice.

### ARGUMENT

## I.    PLAINTIFF VIOLATED RULE 23.1 BY FAILING TO PLEAD PARTICULARIZED FACTS JUSTIFYING WHY ITS FAILURE TO MAKE A PRE-SUIT DEMAND IS EXCUSED.

FED. R. CIV. P. 23.1 forbids a shareholder from maintaining a suit on a company's behalf unless it has (1) made a pre-suit demand on the board of directors that was improperly denied, or (2) pled particularized facts demonstrating valid reasons why the failure to make such a demand is excused. FED. R. CIV. P. 23.1 (derivative plaintiff must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for plaintiff's failure to obtain the action or for not making the effort."); *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (to "protect the interests of the corporation," a

9

derivative plaintiff must demonstrate that the corporation itself has "refused to proceed after suitable demand, unless excused by extraordinary conditions"). This demand requirement is far more than a formality. It "implements the basic principle of corporate governance that decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." *Id.* at 101. *See also Blasband v. Rales*, 971 F.2d 1034, 1048 (3d Cir. 1992) (same).

Therefore, absent "extraordinary conditions," shareholders are required "to afford the directors an opportunity to exercise their reasonable business judgment and 'waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right.'" *Kamen*, 500 U.S. at 95-96 (citation omitted). The practical effect of this regimen is that the board of directors serves as the gatekeeper to litigation brought in the corporation's name, and the demand requirement "exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits." *Blasband*, 971 F.2d at 1048 (quoting *Aronson v. Lewis*, 473 A.2d 805, 812-12(Del. 1984)). *See also Kamen*, 500 U.S at 103-04 (requiring the exhaustion of intracorporate remedies spares "both the courts and the parties the expense associated" with the issue of demand futility).

"[A] court that is entertaining a derivative action . . . must apply the law of the state of incorporation." *Kamen*, 500 U.S. at 108-09. Because 3M is incorporated in Delaware, it is Delaware law that provides the substantive rules for evaluating whether Plaintiff has pled facts establishing its standing to maintain this suit on 3M's behalf. Delaware law addressing the demand requirement, and the exceptional circumstances when it is excused, is well-developed, as is the federal case law interpreting and applying Delaware law.

10

When a shareholder derivative suit challenges a decision of the board of directors, as here, Delaware law applies the test enunciated in *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984). Under this test, demand is excused only if "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent," or "(2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id.* at 814.

In pleading demand futility based on the first prong's "disinterested" element, courts have ruled that "[d]irectorial interest exists whenever divided loyalties are present, or where the director stands to receive a personal financial benefit from the transaction not equally shared by the shareholders." *Blasband*, 971 F.2d at 1048.[7] Furthermore, a director will be considered not "independent" under the first prong when beholden to or dominated by someone else that has an interest in the transaction acted upon by the board. *Id.* The goal of this analysis is to determine whether a director's decision "is based on the corporate merits of the subject before the board rather than extraneous considerations or influences" that would affect consideration of the demand. *Aronson*, 473 A.2d at 816; *see also SFBC*, 2007 WL 2127213, at *5 (same).

The second prong of the *Aronson* test rests upon the process undertaken in approving or implementing the challenged action (here Proxy Statement approval). This prong requires a plaintiff to plead particularized facts that overcome the legal presumptions each director enjoys under the business judgment rule. Specifically, the law requires a plaintiff to plead particularized facts that raise (1) a reason to doubt that the action was taken honestly and in good faith, or (2) a reason to doubt that the board was adequately informed in making the decision. *Aronson*, 473

---

[7] *See also In re SFBC Int'l, Inc. Secs. & Deriv. Litig.*, C.A. No. 06-165-SRC, 2007 WL 2127213, at *5 (D. N.J. July 25, 2007) ("Directorial interest exists where a director will receive a personal financial benefit from a transaction or where a corporate decision will have a materially detrimental impact on a director, but not on the corporation or the stockholders.").

11

A.2d at 805. *See also Seinfeld v. Barrett*, C.A. 05-298-JJF, 2006 WL 890909, at *2 (D. Del. Mar. 31, 2006); *In re Walt Disney Co. Deriv. Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003).

Here, Plaintiff has failed to plead the particular facts necessary to demonstrate that demand is excused under either prong of *Aronson*. *See Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007) ("[A] plaintiff is obliged to plead, with particularity, facts that establish demand futility.").

## II.   PLAINTIFF IS WRONG IN ITS CONTENTION THAT THE COMPLAINT IS EXEMPT FROM THE DEMAND REQUIREMENT OF RULE 23.1.

Faced with the fatal prospect of not satisfying the stringent pleading requirements of Rule 23.1, Plaintiff argues that the demand requirement does not even apply in this case. Specifically, the Complaint states that a derivative plaintiff asserting claims predicated on Section 14(a) of the Exchange Act and disclosure violations under Delaware law is exempt from Rule 23.1. That argument is contrary to the law.

Both federal and state courts routinely and overwhelmingly have held that the demand requirement of Rule 23.1 applies to derivative cases alleging Section 14(a) and state law disclosure violations. *See, e.g., Shaev v. Saper*, 320 F.3d 373, 377-78 (3d Cir. 2003) ("threshold question" in a derivative § 14(a) case is Rule 23.1 demand requirement); *In re CNET Networks, Inc. S'holder Deriv. Litig.*, 483 F. Supp. 2d 947, 966 (N.D. Cal. 2007) (applying Rule 23.1 and *Aronson* test to § 14(a) claim); *Rudolph v. Cummins*, C.A. No. H-06-2671, 2007 WL 1189632, at *3 (S.D. Tex Apr. 19, 2007) ("a derivative Section 14(a) claim is subject to the demand requirement"); *In re Computer Sciences Corp. Deriv. Litig.*, C.A. Nos. 06-06288, 06-05356, and 06-06512, 2007 WL 1321715, at *4 n.4 (C.D. Cal. Mar. 26, 2007) (same); *St. Clair Shores Gen. Employees Retirement Sys. v. Eibeler*, C.A. No. 06-688, 2006 WL 2849783, at *5 (S.D.N.Y. Oct. 4, 2006) (same); *Halpert Enterps., Inc. v. Harrison*, C.A. No. 06-2331, 2007 WL 486561, at *7

12

(S.D.N.Y. Feb. 14, 2007) (same); *Seinfeld*, 2006 WL 890909, at *2-3 (same); *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 581-84 (Del. Ch. 2007) (applying *Aronson* test to disclosure claims under Delaware law); *Ryan v. Gifford*, 918 A.2d 341, 354-56 (Del Ch. 2007) (same).[8]

Invariably, shareholder plaintiffs who have made this argument point to *Vides v. Amelio*, 265 F. Supp. 2d 273 (S.D.N.Y. 2003), for support—the lone case seeming to adopt this position. That decision, however, is contrary to the Third Circuit's decision in *Shaev* that Rule 23.1 applies to derivative suits asserting 14(a) claims. *Shaev*, 320 F.3d at 377-78. Moreover, the courts that have considered *Vides* consistently have rejected that decision as incorrect or, in any event, refuse to follow it. *See, e.g., CNET*, 483 F. Supp. 2d at 966 (rejecting *Vides*; "weight of the authority supports requiring plaintiffs to make a demand or plead that demand was futile in alleging a claim under Section 14(a)," reasoned that requiring pre-suit demand in a Section 14(a) action "comports with the logic of the demand requirement itself"); *Computer Sciences*, 2007 WL 1321715, at *4 n.4 (same); *Seinfeld*, 2006 WL 890909, at *2-3 (plaintiff argued that court should follow *Vides*, and court did not do so). Tellingly, subsequent decisions from the Southern District of New York have refused to follow *Vides*, too. *St. Clair*, 2006 WL 2849783, at *5 ("the demand requirement [is] applicable to derivative Section 14(a) litigation;" citing Second Circuit decisions in accord); *Halpert*, 2007 WL 486561, at *7 (same); *Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426 (S.D.N.Y 2005) (same).

---

[8] Plaintiff's counsel advanced the same Rule 23.1-is-inapplicable argument as counsel to the plaintiffs in the *Computer Sciences* and *Seinfeld* cases and lost both times. Having been down this road twice before, Plaintiff's motion for summary judgment correctly cites a few of these cases as having rejected its argument.

13

In sum, Plaintiff's Complaint triggers no special exemption. As virtually every court to consider the question has held, Rule 23.1 applies to cases such as this. Accordingly, Plaintiff must satisfy the *Aronson* test in order to maintain a suit on 3M's behalf and has failed.

## III.  PLAINTIFF HAS NOT PLED ANY FACTS TO EXCUSE DEMAND UNDER *ARONSON.*

The two paths a shareholder can take to plead demand excused under *Aronson* are well worn and Plaintiff has failed to find either. This is hardly surprising since *Aronson* requires the pleading of highly specific facts establishing plain conflicts of interest or clear misconduct by a majority of directors, on a director-by-director basis, and Plaintiff's Complaint does not contain any facts describing in any detail the Directors or their supposed misconduct. This absence of facts precludes Plaintiff from meeting its burden of demonstrating that demand was excused under either prong of *Aronson*.

Indeed, to begin with, it cannot be overlooked that the Complaint offers no cogent explanation for why the Board would not act in the Company's best interests if a demand were made. This Board approved the Plan and set the matter for a shareholder vote in order to take advantage of potential and lawful tax savings for the Company. Plaintiff does not plead any facts suggesting that the Board did so for any purpose other than to advance the Company's (and its shareholders') interests. There is simply no reason that the Board should be divested now of its authority to respond to Plaintiff's perceived deficiencies in the Proxy Statement and the Plan. This is precisely the type of shareholder complaint that should be brought to a board's attention for resolution, if any were needed; and it is the exact opposite of the type of suit that a shareholder should unilaterally bring supposedly on the company's behalf.

14

A.     **The Complaint Does Not Plead Particular Facts Establishing That A Majority Of The Board Faces A Substantial Likelihood Of Personal Liability**

This is not a case in which it is pleaded that a majority of the directors acted to secure a personal financial benefit (*i.e.*, a classic "interested" case).   In fact, Plaintiff's Complaint concedes that this is not a "traditionally interested board." Compl. ¶ 12.  Nor is this case one in which a majority of the board is alleged to be dominated and controlled by someone who was interested in the board action in question (*i.e.*, the "not independent" case).  The Complaint does not contain any allegations of domination at all.  Here instead, Plaintiff purports to rely on that "rare case" "where defendants' actions were so egregious that a substantial likelihood of director liability exists," such that it is reasonable to infer that the directors thereby are personally interested. *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995). *See also In re Merck & Co. Inc. Sec. Deriv. & ERISA Litig.*, C.A. No. 06-2911, 2007 WL 2049017 (3d Cir. July 18, 2007) (the "substantial likelihood of liability" standard is "quite high" and requires "egregious" conduct).

Plainly, "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." *Aronson*, 473 A.2d at 815. *See also Kanter*, 489 F.3d at 180 ("The bare allegation that a board is interested because its members would be reluctant to sue themselves has been considered and rejected."); *Seinfeld,* 2006 WL 890909, at *2 (no substantial likelihood of liability for similar § 14(a) claim based alleged misstatements in proxy statements about performance-based compensation plan).  Were it otherwise, Rule 23.1 would be rendered a nullity because demand would be excused in every case that named as defendants a majority of the board.  For that reason, a director may be charged with being "interested" only if the alleged claim creates a "substantial likelihood of personal liability."  This means that the Plaintiff's

Complaint must describe such egregious conduct that a judgment adverse to each of a majority of the Directors is not just possible, but highly probable. Plaintiff's averments do not meet this tall hurdle.

First, the "substantial likelihood of liability" interest arises in a situation in which the "decision by the board to bring suit could have potentially significant financial consequences" so that the directors have a "disqualifying financial interest that disables them from impartially considering a response to a demand." *Rales*, 634 A.2d at 936. As noted, Plaintiff seeks injunctive relief, not money damages from the Independent Directors.[9] Accordingly, an adverse judgment will not have any, much less a significant, "financial consequence" for the Directors. The specter of this lawsuit, therefore, cannot give rise to any conflict of interest for the majority of the Directors regardless of the probability of its success.

There is yet another reason why this is not the rare case demonstrating a "substantial likelihood of liability" sufficient to excuse demand. This is because Plaintiff's underlying legal theory is meritless. As articulated in response to Plaintiff's motion for summary judgment and in the Defendants' Opening Brief in support of their motion to dismiss, Plaintiff's attempts to plead

---

[9] Plaintiff's Complaint seeks an equitable accounting "for losses that [the Company] has and will sustain by virtue of the conduct alleged." Compl. at 9, item D. Plaintiff may contend that this amounts to seeking a monetary judgment against the Independent Directors (even though they are not Plan participants) as well as a money judgment against the other Defendants who are Plan participants. Were it to so contend, Plaintiff would face an additional hurdle in demonstrating a substantial likelihood of liability. Specifically, 8 *Del. C.* § 102(b)(7), permits a company to eliminate entirely a director's liability for money damages arising from breaches of the duty of care short of intentional misconduct or disloyalty. 3M has elected to exculpate its directors to the fullest extent permissible under Section 102(b)(7). Consequently, Plaintiff must, but has not, pled facts to demonstrate that the Directors intentionally made false or misleading statements in the Proxy Statement or were interested or not independent in order to create a substantial likelihood of liability. *See, e.g., In re Fed. Nat. Mortg. Ass's Sec. Deriv. ERISA Litig.*, C.A. No. 04-1783, 2007 WL 1577872, at *11, n.9 (D.D.C. May 31, 2007) (no substantial likelihood of liability in light of Section 102(b)(7) immunization); *Laties v. Wise*, C.A. No. 1280-N, 2005 WL 3501709, at *2 (Del. Ch. Dec. 14, 2005) (same).

16

and prove any violations under Section 14(a) and the state fiduciary duty principles suffer numerous failings as a matter of law. Those cogent points will not be repeated here but are relied upon. To summarize, (1) the Plan complies with the requirements for tax deductibility under 162(m); (2) the Proxy Statement did not omit material information required to be disclosed; and (3) Plaintiff has not adequately pled (and the actual facts refute) that any defendant acted negligently or (much less) intentionally engaged in wrongdoing. *See, e.g.,* *Seinfeld*, 2006 WL 890909, at *2 (no substantial likelihood of liability based upon similar § 14(a) and fiduciary duty complaint).

Moreover, the alleged misconduct (alleged technical misstatements and omissions in the Proxy Statement) is insufficiently egregious conduct to create a substantial likelihood of liability, even if true (and it is not). As noted, Plaintiff's complaint is dependent on its own misstatement of the Proxy Statement and its misunderstanding of the tax code and SEC regulations. There are no facts pleaded that the Directors shared (or even should have shared) Plaintiff's disclosure views. For that reason, Plaintiff's Complaint, at best, alleges nothing more than its disagreement with the Board of Directors and its unfounded assertion that the Proxy Statement contains material misstatements and omissions.

Both federal and Delaware case law demonstrate that this type of a generic misstatement case falls short of creating a disabling interest. In *Ryan*, the Delaware Chancery Court considered whether allegations that the directors had made misstatements were sufficiently egregious to give rise to a substantial likelihood of liability. *Ryan*, 918 A.2d at 355-56. The court found that the complaint did so, but only because the plaintiff alleged particular facts showing that the directors knowingly and purposefully engaged in prohibited conduct, deliberately "lie[d] to [] shareholders" and approved "false disclosures, obviously intended to

17

mislead shareholders." *Id.* Such intentional misconduct, the court found, "qualifies as one of those 'rare cases [in which] a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.'" *Id.* at 355-56 (footnote omitted).

In contrast, in a similar case that lacked allegations of specific facts of intentional wrongdoing, the district court in *Computer Sciences* held that there was not alleged a substantial likelihood of liability and thus demand was not excused. *Computer Sciences*, 2007 WL 1321715, at *4. This was despite the fact that the company had admitted that misstatements had been made in the company's public filings and proxy statement. *In re Computer Sciences Corp. Deriv. Litig.*, C.A. Nos. 06-5288, 06-6512, and 06-5356, 2007 WL 2274951, at *8 (C.D. Cal. July 24, 2007).

The lesson from these two cases, and the others like them, is that alleged misstatements alone are far too mundane to create a substantial likelihood of liability that will excuse demand. Rather, it will take pleading the extraordinary (*e.g.*, evidence of intentional fraud and lying) to create sufficiently probable liability that amounts to a debilitating interest. Given that this Complaint does not contain even a hint that any of the Directors had a culpable state of mind, Plaintiff plainly has failed to plead the "rare case" in which a substantial likelihood of liability exists.

**B.    Plaintiff Failed To Plead Particularized Facts Raising A Reasonable Doubt That The Board's Decision Regarding The Proxy Statement's Disclosures Is Not Entitled To The Business Judgment Rule Presumptions**

In making the decision to adopt the Plan and in disclosing its features in the Proxy, the Board is presumed to have "acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *In re Walt Disney Deriv. Litig.*, 906 A.2d 27, 52 (Del. 2006). To overcome that presumption for purposes of addressing the second

18

prong of *Aronson*, Plaintiff's Complaint "must plead particularized facts sufficient to raise: (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *Walt Disney*, 825 A.2d at 286. *See also Seinfeld*, 2006 WL 890909, at *2 (same). Plaintiff has failed to plead facts to establish either.

First, as plainly stated in the Proxy Statement, the Compensation Committee relied upon the advice of compensation experts prior to adopting the Plan and, in turn, the Board relied upon the Compensation Committee when it included the Plan discussion in the Proxy Statement. Proxy Statement at 33-34; 39. Plaintiff does not allege any facts to suggest that the Directors did not so rely, that the Directors' reliance was improper or unjustified, or that despite that reliance the Directors nevertheless knew that the Proxy Statement falsely described the Plan or omitted material facts.

> Under Delaware law, the Directors' good faith reliance entitles them to "full protection":
>
> A member of the board of directors . . . shall, in the performance of such member's duties, be fully protected in relying in good faith upon the records of the corporation, and in good faith upon such information, opinions, reports or statements presented to the corporation by any of the corporation's officers or employees, or committees of the board of directors or by any other person as to matters the member reasonably believes are within such other persons' professional or expert competence and who has been selected with reasonable care by or on behalf of the corporation.

8 *Del. C.* § 141(e). In other words, because the Complaint does not plead particular facts showing that the Compensation Committee could not properly rely on the experts(and the other Directors on the Compensation Committee, the Section 141(e) protection precludes even an inference—nowhere pleaded—that the Directors approved the Proxy Statement in bad faith or without adequate information. *CNET*, 483 F. Supp. 2d at 963 (holding directors did not act in

bad faith where they relied on company records pursuant to § 141(e)). Accordingly, the Directors' conduct has not been adequately challenged and *Aronson* is not satisfied.

Second, it belies common sense to suggest that the Board did not truly believe that the Proxy Statement was correct, that the Plan complied with Section 162(m), and that the Company would be eligible for the tax deductions. What possible reason could the Plaintiff conjure up for why the Board would believe otherwise yet issue the Proxy Statement anyway and jeopardize the Company's tax deduction? Why would the Board seek shareholder approval for an action it could take even without shareholder approval, except that it wanted to secure the tax benefit for the Company? The Complaint pleads no answer; indeed, none is available.

Not coincidently, the established jurisprudence reasons that the deference afforded a board of directors is not overcome absent pleaded facts establishing that the board knowingly and intentionally acted contrary to the company's interests. For example, in the noteworthy *Disney* case, the Delaware Supreme Court recently emphasized that intentional misconduct is necessary to establish the form of dishonesty and bad faith to overcome the presumption of the business judgment rule: "A failure to act in good faith may be shown, for instance, where the fiduciary *intentionally* acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the *intent* to violate applicable positive law, or where the fiduciary *intentionally* fails to act in the face of a known duty to act, demonstrating a *conscious* disregard for his duties." *Walt Disney*, 906 A.2d at 67 (Del. 2006) (emphasis added).

Again, recent federal and Delaware cases are instructive and illustrative. In *Ryan*, the Delaware Chancery Court explained that the *knowing* backdating of stock options in clear violation of the company's shareholder-approved compensation plan established bad faith and dishonesty that voided the business judgment rule presumption. *Ryan*, 918 A.2d 341 ("A board's

knowing and intentional decision to exceed the shareholders' grant of express (but limited) authority raises doubt regarding whether such decision is a valid exercise of business judgment and is sufficient to excuse a failure to make demand.").

Federal cases have distinguished *Ryan* on the facts and dismissed derivative suits for failure to plead demand futility under *Aronson* when the plaintiffs failed to plead particularized facts showing that the directors knowingly and intentionally granted backdated options and lied about it. *See, e.g., In re Openwave Sys. Inc. S'holder Deriv. Litig.*, C.A. No. 06-03468, 2007 WL 1456039, at *8 (N.D. Cal. May 17, 2007) (absent facts suggesting intentional misconduct, plaintiff could not establish demand futility); *CNET*, 483 F. Supp. 2d at 963, 966 (same; "Simply approving the options that were backdated is not sufficient."); *see also Fink v. Komansky*, C.A. No. 03-388, 2004 WL 2813166, at *4 (S.D.N.Y. Dec. 8, 2004) (demand not excused for misstatements where "[t]he Amended Complaint does not lay out any specific facts demonstrating that the defendants were aware of the unlawful nature of Enron's conduct that would signal to the Board that Merrill Lynch should not do business with Enron"). Thus, the second prong of *Aronson* will be satisfied on bad faith and dishonesty grounds only where the complaint sets forth specific facts of intentional wrongdoing.

As in the federal cases and unlike *Ryan*, the Complaint here does not plead any facts, much less particularized facts, indicating that the Directors knew the Proxy Statement contained misstatements and omissions or that the Plan would not qualify for the tax deduction and yet solicited shareholder approval in the Proxy Statement anyway. Plaintiff thus has not met its burden to demonstrate that the Board acted in bad faith or dishonestly.

Plaintiff has suggested in its summary judgment papers that the decision in *Seinfeld* supports its assertion—not pleaded—that the 3M Board acted dishonestly and in bad faith simply

by making alleged misstatements. In that case, Judge Farnan found the second *Aronson* prong to be satisfied by the plaintiff, but did not identify which particularized facts were pled by the plaintiff that gave rise to his conclusion that the board of directors acted with the requisite intent to harm the company. Rather, the decision suggests that the mere existence of misstatements in the proxy "could" establish bad faith and dishonest conduct. *Seinfeld*, 2006 WL 890909, at *3. Here, where the Complaint does not contain any facts describing any conduct by the Directors with respect to the drafting, reviewing, and approval of the Proxy Statement, it simply cannot be that Plaintiff has sufficiently pled that the Directors acted in bad faith or dishonestly. In addition, Judge Farnan's decision was rendered prior to the Delaware Supreme Court's rulings clarifying that bad faith requires intentional misconduct. *See Walt Disney*, 825 A.2d at 286; *Stone v. Ritter*, 911 A.2d 362 (Del. 2006). The federal courts addressing the bad faith element in the *Aronson* test subsequent to these two clarifying decisions also have required intentional misconduct. *See, e.g.*, *Openwave*, 2007 WL 1456039, at *8; *CNET*, 483 F. Supp. 2d at 963, 966.

Last, the same lack of particularized pleading reflects Plaintiff's failure to show that the Board was grossly negligent in failing to inform itself sufficiently prior to approving the Proxy Statement. Specifically, the Complaint is devoid of any allegations describing any information that the Directors failed to consider, let alone ignored, in approving the Proxy Statement for distribution. Plaintiff therefore has not called into doubt whether the Directors were adequately informed.

For these reasons, the Complaint lacks sufficient particularized facts to satisfy the second *Aronson* prong and demand is not excused.

22

## CONCLUSION

For all of these reasons, 3M and the Independent Directors respectfully request that Plaintiff's Complaint be dismissed with prejudice pursuant to Rule 23.1 for failure to plead particularized facts demonstrating that demand was excused.

Daniel A. Dreisbach (#2583)

OF COUNSEL:
Paul H. Dawes
Latham & Watkins LLP
140 Scott Drive
Menlo Park, California 94025
(650) 328-4600

J. Christian Word
Kevin H. Metz
Latham & Watkins LLP
555 Eleventh St. NW
Washington, DC 20004
(202) 637-2200

Dated: September 10, 2007

Steven J. Fineman (#4025)
Geoffrey G. Grivner (#4711)
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700
Dreisbach@rlf.com
Fineman@rlf.com
Grivner@rlf.com

Attorneys for 3M Company, Linda G. Alvarado, Vance D. Coffman, Michael L. Eskew, W. James Farrell, Herbert L. Henkel, Edward M. Liddy, Robert S. Morrison, Aulana L. Peters, and Rozanne L. Ridgway

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2007, I electronically filed the foregoing document

with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand

Delivered to the following:

Seth D. Rigrodsky, Esquire
Brian D. Long, Esquire
Rigrodsky & Long, P.A.
919 N. Market Street, Suite 980
Wilmington, DE 19801

Philip A. Rovner, Esquire
Potter Anderson & Corroon, LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19899-0951

Steven J. Fineman (#4025)
fineman@rlf.com