## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INSULATORS AND ASBESTOS WORKERS LOCAL NO. 14 PENSION FUND, Derivatively On Behalf Of 3M Company, | ) ) ) | Civil Action No. 07-416 (GMS) |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| GEORGE W. BUCKLEY, LINDA G. ALVARADO, VANCE D. COFFMAN, MICHAEL L. ESKEW, W. JAMES FARRELL, HERBERT L. HENKEL, EDWARD M. LIDDY, ROBERT S. MORRISON, AULANA L. PETERS, ROZANNE L. RIDGEWAY, PATRICK D. CAMPBELL, MOE S. NOZARI, FREDERICK J. PALENSKY, RICHARD F. ZIEGLER, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| 3M COMPANY, a Delaware Corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

## 3M AND INDIVIDUAL DEFENDANTS' JOINT ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for George W. Buckley, Patrick D. Campbell, Moe S. Nozari, Frederick J. Palensky, and Richard F. Ziegler*

Daniel A. Dreisbach (#2583)
Steven J. Fineman (#4025)
Geoffrey G. Grivner (#4711)
RICHARDS LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
dreisbach@rlf.com
fineman@rlf.com
grivner@rlf.com

*Attorneys for 3M Company, Linda G. Alvarado, Vance D. Coffman, Michael L. Eskew, W. James Farrell, Herbert L. Henkel, Edward M. Liddy, Robert S. Morrison, Aulana L. Peters, and Rozanne L. Ridgeway*

OF COUNSEL:

Thomas F. Ryan
Walter C. Carlson
James W. Ducayet
Sharlene P.B. Hobson
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000

Dated: September 10, 2007

OF COUNSEL:

Paul H. Dawes
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, California  94025

J. Christian Word
Kevin H. Metz
LATHAM & WATKINS LLP
555 Eleventh St. NW
Washington, DC 20004

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS .........................................3

SUMMARY OF THE ARGUMENT .................................................................4

STATEMENT OF FACTS ..................................................................................5

   A.  Background of the Plan. ..............................................................................5

   B.  The Proxy Statement. ..................................................................................8

ARGUMENT ......................................................................................................10

I.  PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE THAT A DEMAND ON THE COMPANY'S BOARD OF DIRECTORS WOULD BE FUTILE. .......................................10

II.  PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS MATTER OF LAW. .....................10

   A.  As The Party With The Burden Of Proof, Plaintiff Bears A Substantial Burden In Seeking Summary Judgment. ...................................................10

   B.  Plaintiff Is Not Entitled To Judgment As A Matter Of Law With Respect To Its Section 14(a) Claim. .....................................................................12

      1.  The Proxy Statement Does Not Contain Any False or Misleading Statement of Material Fact Regarding the Tax Deductibility of Payments Under the Plan. ...........12

         a.  The Proxy Statement Does Not Represent That Payments Under the Plan "Would" Be Tax Deductible. ...............................................................12

         b.  The Proxy Statement Makes No False Statements Regarding Payments Under the Plan If Shareholder Approval Is Not Obtained. ....................................13

            (1)  The Proxy Statement Does Not State That the Plan Would Be Implemented Even If Shareholders Rejected It. .........................................14

            (2)  Plaintiff Has Not Established That the Alleged Statement Was Materially Misleading as a Matter of Law. .................................................17

            (3)  Plaintiff's Extensive Reliance on Shaev Is Unavailing. ...................................19

      2.  Plaintiff Has Not Established That the Proxy Statement Omitted Material Terms. ............................................................................................20

a.  Item 10(a)(2) Did Not Require the Proxy Statement to Contain a New Plan
    Benefits Table. ...................................................................................................20

b.  The Proxy Statement Disclosed the Maximum Bonuses Payable Under the
    Plan. ....................................................................................................................21

c.  The Proxy Statement Describes the Class of Executives for Whom
    Shareholder Approval Is Necessary for Payments Under the Plan to Be
    Tax Deductible.....................................................................................................25

3.  Plaintiff Has Not Established a Causal Link Between the Alleged
    Misstatements and Any Injury Purportedly Suffered by the Company.......................27

4.  Plaintiff Has Not Established That Defendants Acted with the Requisite State
    of Mind........................................................................................................................29

5.  Plaintiff Has Not Established an Entitlement as a Matter of Law to Injunctive
    Relief...........................................................................................................................30

C.  Plaintiff Is Not Entitled To Judgment As A Matter Of Law With Respect To Its
    Delaware Law Claims.......................................................................................................31

CONCLUSION......................................................................................................................33

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................................11

*Ash v. Baker*,
    392 F. Supp. 368 (E.D. Pa. 1975), *aff'd*, 530 F.2d 963 (3d Cir. 1976) ..............................31

*In re Bressman*,
    327 F.3d 229 (3d Cir. 2003)......................................................................................11

*In re Craftmatic Sec. Litig.*,
    890 F.2d 628 (3d Cir. 1989)......................................................................................27

*Crescent/Mach I Partners, L.P. v. Turner*,
    846 A.2d 963 (Del. Ch. 2000)....................................................................................31

*In re Digital Island Sec. Litig.*,
    223 F. Supp. 2d 546 (D. Del. 2002), *aff'd*, 357 F.3d 322 (3d Cir. 2004)..........................28

*El v. SEPTA*,
    479 F.3d 232 (3d Cir. 2007)......................................................................................11

*Gen. Elec. Co. by Levit v. Cathcart*,
    980 F.2d 927 (3d Cir. 1992)......................................................................................12

*Gould v. Am.-Hawaiian S.S. Co.*,
    351 F. Supp. 853 (D. Del. 1972)................................................................................29

*Gould v. Am.-Hawaiian S.S. Co.*,
    535 F.2d 761 (3d Cir. 1976)..........................................................................11, 17, 29

*Krim v. ProNet, Inc.*,
    744 A.2d 523 (Del. Ch. 1999)....................................................................................32

*Metro Communication Corp. BVI v. Advanced Mobilecomm Techs., Inc.*,
    854 A.2d 121 (Del. Ch. 2004)....................................................................................32

*Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*,
    343 F.3d 669 (3d Cir. 2003)..............................................................................11, 19

*Nat'l Home Prods., Inc. v. Gray*,
    416 F. Supp. 1293 (D. Del. 1976)..............................................................................12

*Nat'l State Bank v. Fed. Reserve Bank of New York,*
    979 F.2d 1579 (3d Cir. 1992)......................................................................................11

*Pub. Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals,*
    913 F.2d 64 (3d Cir. 1990)........................................................................................30

*In re Reliance Sec. Litig.,*
    135 F. Supp. 2d 480 (D. Del. 2001).............................................................12, 13, 28, 29

*Rondeau v. Mosinee Paper Corp.,*
    422 U.S. 49 (1975)....................................................................................................30

*Seinfeld v. Barrett,*
    C.A. No. 05-298-JJF, 2006 U.S. Dist. LEXIS 14827 (D. Del. Mar. 31, 2006)......... *passim*

*Shaev v. Saper,*
    320 F.3d 373 (3d Cir. 2003)...........................................................................16, 18, 19

*Shidler v. All Am. Life & Fin. Corp.,*
    775 F.2d 917 (8th Cir. 1985) ....................................................................................29

*TSC Indus., Inc. v. Northway, Inc.,*
    426 U.S. 438 (1976)..................................................................................................27

*Valenti v. Mitchell,*
    962 F.2d 288 (3d Cir. 1992)......................................................................................31

*Virginia Bankshares, Inc. v. Sandberg,*
    501 U.S. 1083 (1991)................................................................................................28

## STATUTES, RULES, AND REGULATIONS

15 U.S.C. § 78n(a) ............................................................................................. *passim*

15 U.S.C. § 78u-5(c)(1)(A)-(B) ...................................................................................13

26 U.S.C. § 162(a)(1)...................................................................................................8

26 U.S.C. § 162(m) ......................................................................................... *passim*

28 U.S.C. § 1404(a) ......................................................................................................4

17 C.F.R. § 240.14a-9 .............................................................................12, 13, 27, 29

17 C.F.R. § 240.14a-101, Item 10(a)(2) .....................................................................20

17 C.F.R. § 240.14a-101, Item 10(a)(2)(i) ..................................................20

17 C.F.R. § 240.14a-101, Item 10(a)(2)(iii) ...............................................20

26 C.F.R. § 1.162-27 ...................................................................................14

26 C.F.R. § 1.162-27(c)(2).........................................................................25

26 C.F.R. § 1.162-27(e)(4)(i).................................................................14, 22

26 C.F.R. § 1.162-27(e)(4)(ii)...................................................................25

Fed. R. Civ. P. 12(b) ....................................................................................3

Fed. R. Civ. P. 12(b)(6)............................................................................4, 10

Fed. R. Civ. P. 23.1 .............................................................................3, 4, 9, 10

Fed. R. Civ. P. 56(b) .....................................................................................2

Fed. R. Civ. P. 56(c) ...................................................................................10

## OTHER AUTHORITIES

H.R. Rep. No. 103-213 (Aug. 4, 1993) *reprinted in* 1993 U.S.C.C.A.N. 1088 ............................14

IRS Notice 2007-49, I.R.B. 2007-25 (June 18, 2007) ..................................................25

Item 402 of Regulation S-K..........................................................................7

Pamela P. Peterson & Frank J. Fabozzi, Analysis of Financial Statements, (2d ed. (2006)) ........22

Private Securities Litigation Reform Act of 1995 ....................................................4, 10

SEC Division of Corporation Finance, Manual of Publicly Available Telephone
    Interpretations, Main Manual, Section N, "Proxy Rules and Schedule 14A," July
    1997, Number 34 "Schedule 14A, Item 10(a)(2)(iii)."..........................................21

Defendants Linda G. Alvarado, Vance D. Coffman, Michael L. Eskew, W. James Farrell, Herbert L. Henkel, Edward M. Liddy, Robert S. Morrison, Aulana L. Peters, Rozanne L. Ridgway (the "Independent Director Defendants"); George W. Buckley, Patrick D. Campbell, Moe S. Nozari, Frederick J. Palensky, Richard F. Ziegler (the "Officer Defendants"); and nominal defendant 3M Company ("3M" or the "Company") (collectively, "defendants"), respectfully submit this Joint Answering Brief in Opposition to Plaintiff's Motion for Summary Judgment.

## INTRODUCTION

Plaintiff's motion is plainly improper, and displays a complete disregard for the basic requirements for summary judgment under the Federal Rules of Civil Procedure. Plaintiff demands judgment as a matter of law, before the Court has ruled on the threshold issues of whether plaintiff has standing to bring this claim or whether the Complaint states a claim, before the parties have conducted any discovery, and without first seeking permission from this Court. The motion is obviously premature and contrary to the Court's standing orders, which do not permit the filing of a summary judgment motion prior to a scheduled Rule 16.2(b) conference. In addition, plaintiff's motion is deficient in completely failing to present any evidence, other than plaintiff's mischaracterization as to the actual content of the Proxy Statement, which it claims makes a "representation" as to the tax deductibility of certain compensation. In fact, the Proxy Statement says nothing of the sort.

In 2007, the independent Compensation Committee of the Board of Directors of 3M adopted, subject to shareholder approval, an "Executive Annual Incentive Plan" (hereinafter, the "Plan"). The Plan was intended to provide short-term incentive compensation to certain of the Company's executives in a manner to allow that compensation to be deductible under Section 162(m) of the Internal Revenue Code of 1986, as amended (the "Tax Code"). To that end, the

1

Company solicited, by means of a proxy statement dated March 26, 2007 (hereinafter, the "Proxy Statement"), the approval of its shareholders for the Plan and the material terms under which compensation would be paid to executives participating in the Plan. The Compensation Committee is comprised entirely of outside independent directors with no financial interest in the Plan, and there is no dispute that the purpose of seeking shareholder approval was to obtain a benefit for the Company – *i.e.*, a deduction that would reduce its taxable income. On May 8, 2007, at the Company's Annual Meeting, its shareholders overwhelmingly approved the Plan and these material terms.

Plaintiff's putative derivative lawsuit, supposedly brought for the benefit of 3M, seeks to deprive 3M of a lawful benefit – a tax deduction for certain executive compensation – on the basis of an entirely conclusory and misguided claim that defendants violated the federal securities laws in connection with the Proxy Statement. Plaintiff's complaint alleges that the Proxy Statement was false and misleading under federal proxy law, and that, as a consequence, the shareholder's vote on the Plan is a nullity and therefore the Plan does not satisfy the Tax Code. Plaintiff received the Proxy Statement approximately five weeks before the Annual Meeting. However, notwithstanding its current objections, plaintiff made no effort to alert the Company to any concerns it had about the contents of the Proxy Statement and made no effort to seek any relief prior to the shareholder vote.

Now, without making any demand on the Company's Board of Directors, before any defendant has filed an answer or other responsive pleading, and prior to any discovery, plaintiff seeks judgment as a matter of law that the Proxy Statement was materially false and misleading. Remarkably, this motion is unaccompanied by any evidentiary submission of the sort envisioned by Fed. R. Civ. P. 56(b) – no answers, deposition testimony, answers to interrogatories,

2

admissions on file, not even an affidavit from the plaintiff itself – to establish that 3M shareholders were misled by the Proxy Statement and that the defendants were negligent in connection with that document.

As demonstrated below, plaintiff's motion is not only ill-timed, it is ill-founded.  As a threshold matter, plaintiff has not satisfied the strict pleading requirements of Fed. R. Civ. P. 23.1 by alleging, with particularity, facts sufficient to show that demand on the Company's Board of Directors would be futile.  The complaint must be dismissed on this basis alone. Moreover, plaintiff is plainly not entitled to judgment as a matter of law under either Section 14(a) or its claim under Delaware law.

## NATURE AND STAGE OF THE PROCEEDINGS

On June 28, 2007, plaintiff filed this putative shareholder derivative complaint, purportedly in the name of and to benefit the Company, against the Independent Director Defendants and Officer Defendants.  Plaintiff alleges that 3M's 2007 Proxy Statement included material misstatements and omissions about the Company's 2007 Executive Annual Incentive Plan, and thus violated both Section 14(a) of the Securities Exchange Act of 1934, and the directors' and officers' fiduciary duties under Delaware law.  By stipulation approved by this Court on July 24, 2007, defendants were given until September 10, 2007 to file their answers or other responsive pleadings.

On August 21, 2007, prior to the filing of any responsive pleadings, plaintiff filed a Motion for Summary Judgment, asserting that there are no genuine issues of material fact with respect to its claims and seeking entry of judgment as a matter of law.  Contemporaneously with the filing of this Answering Brief, the Independent Director Defendants are also filing a Motion to Dismiss the Complaint for Failure to State a Claim Under Fed. R. Civ. P. 12(b) and 23.1, and the Officer Defendants are filing a Motion to Dismiss the Complaint for failure to comply with

3

the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995, failure to state a claim and lack of subject matter jurisdiction. In addition, all defendants are also contemporaneously filing a motion to transfer the action to the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

## SUMMARY OF THE ARGUMENT

1.    As a threshold matter, and for the reasons set forth in Defendants' Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 23.1, plaintiff's Motion must be dismissed because plaintiff has not adequately alleged that demand on the Company's Board of Directors, which is comprised of a majority of outside, independent directors, would be futile.

2.    Plaintiff's claim that the Proxy Statement "represented" that "under the proposed Plan the named executive officers' compensation *would* be deductible by the Company for federal income tax purposes if the Plan is approved by the stockholders," (Pl. Op. Br. at 3; emphasis added), is demonstrably false. The Proxy Statement contains no such statement, but instead merely says that the Plan is *intended* to comply with the requirements for deductibility.

3.    The Proxy Statement also does not "threaten" to implement the Plan even if shareholder approval were not obtained. Plaintiff has twisted the language of the Proxy Statement, which simply states that, if shareholder approval were not obtained, the Compensation Committee "would need to decide" among various alternatives. The terms of the Plan make clear that eligible executives have no absolute right to incentive compensation under the Plan if shareholder approval were not obtained, and there is no prohibition under the Tax Code or otherwise in paying incentive compensation in the absence of shareholder approval. Nor has plaintiff made any showing that any alleged statements in this regard were "so obviously important" to a reasonable shareholder that they are material omissions as a matter of law.

4.    The Proxy Statement discloses all of the "material terms" of the Plan. Plaintiff's claim that a "New Benefits Table" was required is in direct conflict with the applicable SEC regulations, and the claim that the Proxy Statement did not appropriately disclose the maximum amount of the compensation that might be paid under the Plan is simply incorrect. In addition, the Proxy Statement adequately describes the class and number of executives with respect to which it was seeking tax-deductible compensation under Section 162(m), and plaintiff has not established that any additional information would be "so obviously important that reasonable minds could not differ on the question of [the] materiality" of such additional information. For all of these reasons, judgment as a matter of law would be improper.

5.    Plaintiff has made no evidentiary submission whatsoever with respect to whether any defendant acted with the requisite mental state of negligence, and such negligence may not be presumed as a matter of law.

6.    Plaintiff has made no evidentiary submission whatsoever with respect to whether the alleged misstatements proximately caused the alleged injury for which it seeks recovery.

7.    Plaintiff has not established the absence of any disputed issues of fact as to whether it is entitled to injunctive relief, particularly in light of plaintiff's own lack of action prior to the shareholder vote.

8.    For all of the reasons discussed in connection with plaintiff's claims under Section 14(a), its request for entry of judgment as a matter of law as to its Delaware law claims must also be denied.

## STATEMENT OF FACTS

### A.    Background of the Plan.

3M has a philosophy of providing compensation to its executives in a manner that is "closely tied to the performance and growth of the Company, so that their interests are aligned

with the interests of 3M stockholders." (Proxy Statement at 33.) In addition, the Company seeks to offer compensation that is "competitive to attract the best talent to 3M." (*Id.*) The Company has long had a variety of compensation programs intended to fulfill these objectives, including performance-based short-term incentive compensation programs that have been in place since 1956. (Declaration of Vance D. Coffman ("Coffman Decl.") at ¶ 2.) These programs have historically included short-term compensation plans that are based on the Company's quarterly financial performance, as well as a longer-term incentive compensation plan and stock ownership programs that are available to a number of the Company's executives and eligible employees. (*Id.* at ¶ 3.)

The Company's previous performance-based short-term incentive compensation program for executives covered by Section 162(m) of the Tax Code was first approved by the Company's shareholders in 1994, and was re-approved in 1999 and again in 2002. Despite plaintiff's claims to the contrary (*see, e.g.*, Pl. Op. Br. at 3), payments under that prior plan were tax deductible. (Coffman Decl. at ¶ 4.) Beginning in 2006, the Compensation Committee of the Company's Board of Directors began re-examining its long-term and short-term incentive compensation programs to ensure that these programs most effectively aligned employee and shareholder interests. (*Id.*) One change that the Committee explored was a modification of the time period over which the Company's performance would be measured for purposes of determining the amount of short-term incentive compensation. The Committee believed that such an adjustment would more appropriately provide incentives to the Company's executives to operate the Company's diverse businesses in a manner consistent with building long-term shareholder value. (*Id.* at ¶ 5.) In addition, the Compensation Committee sought to give itself the maximum amount of discretion possible. That was intended to ensure that when making individualized

6

compensation determinations, the Committee could base its decisions on a host of factors particular to the executive and that executive's operational responsibilities in order to achieve its objectives of motivating performance at his or her highest level, rewarding outstanding achievements, and retaining those executives with exceptional abilities and leadership skills. (*Id.* at ¶ 6.)

In June 2006, the independent Compensation Committee of the Company's Board of Directors retained outside consultants from the firm of Frederic W. Cook & Co., Inc. to provide advice on its compensation programs, including its short-term incentive compensation plan. (Coffman Decl. at ¶ 4.) Working in conjunction with the consultants from Frederic W. Cook & Co., Inc., the Compensation Committee decided to replace its existing quarterly-based short-term incentive compensation plan with a plan that provided for compensation based on the Company's annual financial results, as adjusted to exclude special items. (*Id.* at ¶ 7.) The Plan also provided maximum flexibility for allowing future Committee discretion in determining the amount of individual compensation amounts. The Plan was approved by the Compensation Committee on February 11, 2007, subject to the condition that the Plan be approved by shareholders at the next annual meeting. (*Id.* at ¶ 8.)

The Plan stipulates that it is intended to "attract and retain highly qualified individuals as executive officers of 3M; to focus their attention on achieving certain business objectives established for 3M and its business units; and to provide these individuals with incentive compensation that is intended to qualify as performance-based compensation under Section 162(m) of the Internal Revenue Code." (Proxy Statement at H-1, ¶ 1.) The Plan applied to the company's five "Named Executive Officers" – *i.e.*, those executives who were covered by the SEC's disclosure requirements for executive compensation under Item 402 of Regulation S-K –

as well as those other senior executives whose compensation is approved by the Committee and whose participation in the Plan was also approved by the Committee. This group included thirteen executives in addition to the five Named Executive Officers. (*Id.* at ¶¶ 2(c); (d); 4; Coffman Decl. at ¶ 8.) However, under the applicable tax regulations, compensation to these thirteen executives is *already* tax deductible under Section 162(m) of the Tax Code, even in amounts in excess of $1 million, without the necessity that the Plan be approved by shareholders. *See* 26 U.S.C. § 162(a)(1); (m).

The Plan provides that the Named Executive Officers are entitled to a potential maximum award of 0.25% of the Adjusted Net Income of a Plan Year. (Proxy Statement at H-1, ¶ 5.) Adjusted Net Income is defined under the Plan as "the net income of 3M as reported in the Consolidated Statement of Income as adjusted to exclude special items." (*Id.* at ¶ 2(a).) Other executives were entitled to a maximum amount of 0.10% of Adjusted Net Income. (*Id.* at ¶ 5.) Subject to these maximums, the Plan provides complete discretion to the Compensation Committee to make awards that it determines are in the best interests of the Company and its shareholders. (*Id.* at ¶ 5.) The Plan also provides that "[n]o person shall have any claim or right to receive annual incentive compensation under this Plan, except as provided in accordance with the provisions of this Plan and as approved by the Committee." (*Id.* at H-2, ¶ 9.)

**B.    The Proxy Statement.**

Once the Compensation Committee adopted the Plan subject to shareholder approval, the Company began the process of soliciting that approval. To that end, the Company's legal and financial advisors prepared a summary that described all of the material features of the Plan, and explained that the Board of Directors recommended that shareholders approve the Plan. (Declaration of Gregg M. Larson ("Larson Decl.") at ¶¶ 3-4.) The Plan summary was reviewed by the members of the Compensation Committee. (*Id.* at ¶ 4.) The Plan summary, along with a

8

copy of the Plan document itself, was ultimately incorporated into a larger Proxy Statement being prepared in connection with the Company's Annual Meeting to be conducted on May 8, 2007. The Proxy Statement, which was provided to the directors before it was sent to shareholders, included the Plan summary and the Plan document, as well as a lengthy discussion of the Company's compensation policies. (*Id.*)

The Proxy Statement was mailed to the Company's stockholders on or about March 26, 2007. In addition to other listed items of business, including the election of Directors, ratification of the appointment of an independent registered public accounting firm, and revisions to the Company's Restated Certificate of Incorporation, the Proxy Statement requested stockholder approval of the Plan. (*See generally* Proxy Statement at 25-27.)

As the Proxy Statement explained, the Plan was intended to comply with the requirements of Section 162(m) of the Tax Code, so that the Company would be able to deduct for federal income tax purposes payments of annual incentive compensation paid to certain of its executive officers. (Proxy Statement at 31.) As the Proxy Statement also explained, one of the conditions for the payments made pursuant to the Plan to these eligible executive officers to satisfy the deductibility requirements of Section 162(m) was that the material terms under which such compensation will be paid are approved by stockholders. (*Id.* at 25.)

The Company held its Annual Meeting on May 8, 2007. At that meeting, shareholders approved the Plan by a wide margin, with 566,033,236.479 (89%) votes cast in favor, 53,992,509.653 (9%) votes cast against, and 12,986,929.057 (2%) votes abstaining. (Larson Decl. at ¶ 8.)

9

## ARGUMENT

### I.    PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE THAT A DEMAND ON THE COMPANY'S BOARD OF DIRECTORS WOULD BE FUTILE.

On September 10, 2007, 3M and the individual defendants filed motions to dismiss under Fed. R. Civ. P. 12(b)(6) and 23.1. As discussed in more detail in the Independent Directors' Opening Brief in support of that motion, plaintiff has entirely failed in its pleading burden under Fed. R. Civ. P. 23.1 and Delaware law of establishing that a demand on the Company's ten-member Board of Directors would be futile. That Board is comprised of nine outside, independent directors who have no pecuniary interest whatsoever in the Plan, and who are in no way beholden to the one board member, Mr. Buckley, who is a potential beneficiary under the Plan. In addition, the Officer Defendants have filed a motion to dismiss the Complaint for failure to comply with the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995. Because these threshold issues should be addressed before the Court can reach the merits, defendants respectfully request that the Court consider and rule on defendants' motions first before addressing plaintiff's motion for summary judgment.[1]

### II.    PLAINTIFF IS NOT ENTITLED TO JUDGMENT AS MATTER OF LAW.

#### A.    As The Party With The Burden Of Proof, Plaintiff Bears A Substantial Burden In Seeking Summary Judgment.

As the moving party, plaintiff bears the burden of proving that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court must review "the facts in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in

---

[1] Recognizing this defect, Plaintiff's Opening Brief includes a section in which it claims that demand would be futile. (Pl. Op. Br. at 12-14.) In the interest of avoiding duplicative briefing, the Independent Director defendants respectfully refer the Court to their Opening Brief in Support of their Motion to Dismiss for their response, which they incorporate herein by reference.

[his] favor." *See, e.g., Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 343 F.3d 669, 680 (3d Cir. 2003) (internal citation and quotation marks omitted).

In addition, because plaintiff bears the burden of proof at trial, it must take affirmative steps to establish "credible evidence . . . that would entitle [him] to a directed verdict if not controverted at trial." *In re Bressman,* 327 F.3d 229, 237 (3d Cir. 2003) (internal citation and quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("[The] standard [for granting summary judgment] mirrors the standard for a directed verdict . . . which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict."). The burden of *proof* collectively encompasses the burdens of *production* ("the obligation to come forward with evidence of a litigant's necessary propositions of fact") and *persuasion* ("the obligation to convince the factfinder at trial that a litigant's necessary propositions of fact are indeed true."). *See, e.g., El v. SEPTA*, 479 F.3d 232, 237 n.6 (3d Cir. 2007). The Third Circuit has instructed district courts that "it is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El*, 479 F.3d at 238. Moreover, if a party bearing the burden of proof "does not establish the absence of a genuine factual issue, the district court should deny summary judgment *even if no opposing evidentiary matter is presented.*" *Nat'l State Bank v. Fed. Reserve Bank of New York*, 979 F.2d 1579, 1582 (3d Cir. 1992) (emphasis added; internal citation and quotation marks omitted).[2]

---

[2] Plaintiff cites *Gould v. Am.-Hawaiian S.S. Co.*, 535 F.2d 761 (3d Cir. 1976), and *Seinfeld v. Barrett,* C.A. No. 05-298-JJF, 2006 U.S. Dist. LEXIS 14827 (D. Del. Mar. 31, 2006), for the proposition that issues of materiality may be resolved on a summary judgment motion. (Pl. Op. Br. at 6.) Unlike here, however, *Gould* was based on a full evidentiary record, and the Third Circuit actually reversed a number of the district court's materiality holdings on the grounds that

Plaintiff's bare-bones motion essentially ignores this burden. The only evidence plaintiff does submit – the text of the Proxy Statement itself – plainly does not, and cannot, establish its entitlement to judgment as a matter of law.

**B.    Plaintiff Is Not Entitled To Judgment As A Matter Of Law With Respect To Its Section 14(a) Claim.**

To prevail on a claim under Section 14(a), 15 U.S.C. § 78n(a), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9, plaintiff must prove: (1) that the defendants made a material misrepresentation or omission in a proxy statement; (2) with the requisite state of mind; (3) that caused the plaintiff's injury; and (4) was an essential link in the accomplishment of the transaction. *In re Reliance Sec. Litig.,* 135 F. Supp. 2d 480, 511 (D. Del. 2001) (*citing Gen. Elec. Co. by Levit v. Cathcart,* 980 F.2d 927, 932 (3d Cir. 1992)). *Accord Nat'l Home Prods., Inc. v. Gray,* 416 F. Supp. 1293, 1312 (D. Del. 1976) (evaluating various alleged proxy misstatements under the Section 14(a) elements). Plaintiff does not even bother to address many of these elements, and falls far short of establishing *all* of them as a matter of law.

**1.    The Proxy Statement Does Not Contain Any False or Misleading Statement of Material Fact Regarding the Tax Deductibility of Payments Under the Plan.**

**a.    The Proxy Statement Does Not Represent That Payments Under the Plan "Would" Be Tax Deductible.**

*First,* the premise of plaintiff's claim that the Proxy Statement falsely represented to shareholders that payments under the Plan "would" be tax deductible if shareholder approved is sheer fiction. The Proxy Statement says no such thing. The Proxy Statement explained – accurately – that shareholder approval was only "[o]ne of the conditions" necessary for compensation to meet the requirements of Section 162(m), and that the Company would be

---

the issues presented disputed matters of fact. *See, e.g.,* 535 F.2d at 773-75. And as discussed below, *Seinfeld* held that issues of materiality were *not* appropriately resolved on a motion for summary judgment in the absence of a full factual record. (*See* point ii.B.1.b.(2), *infra.*)

entitled to deduct the compensation paid to its Named Executive Officers only if the Plan *both* received shareholder approval *and* "the other requirements for performance-based compensation under Section 162(m) of the Internal Revenue Code are satisfied..." (Proxy Statement at 26, ¶ 7.)  In addition, the Proxy Statement states that the Plan was "*intended* to comply with the requirements of Section 162(m)," (emphasis added), not that it "would" so comply.  The statement that the Plan was "intended to comply" is indisputably true, and plaintiff has proffered no evidence to the contrary.[3]  "Rule 14a-9 only prohibits statements that are false." *In re Reliance Sec. Litig.*, 135 F. Supp. 2d at 514.  Plaintiff claims the Proxy Statement promised shareholders that payments "would" be tax deductible.  It did not.  The absence of such a statement in the Proxy Statement is dispositive of plaintiff's claims here.

> **b.    The Proxy Statement Makes No False Statements Regarding Payments Under the Plan If Shareholder Approval Is Not Obtained.**

In addition to the absence of any affirmative representation that payments under the Plan "would" be tax deductible, plaintiff's claim that the Proxy Statement rendered payments not tax deductible because the Board improperly "threatened" to implement the Plan even if shareholder approval were not received is incorrect.

---

[3] Of course, had the Proxy Statement actually included such a representation, it would plainly be a forward-looking statement under the federal securities laws, actionable only upon proof that the individual defendants actually knew the statement was false. *See* 15 U.S.C. § 78u-5(c)(1)(A)-(B) (statutory "safe harbor" for forward-looking statements); *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 512 (D. Del. 2001) (noting applicability of safe harbor for forward-looking statements contained in a proxy statement).  As discussed below (at point II.B.4, *infra*), plaintiff has offered no evidence as to any individual defendant's mental state, much less made any showing of actual knowledge of the purported falsity of the claimed misrepresentation.

(1)    **The Proxy Statement Does Not State That The Plan Would Be Implemented Even If Shareholders Rejected It.**

To understand plaintiff's claim here, it is useful to begin with the applicable regulations upon which plaintiff bases its claims. Although nominally a claim for violations of the federal proxy rules, the underlying basis for plaintiff's claim is the Treasury Regulation that interprets Section 162(m). This regulation specifies the various items that must be disclosed to shareholders in order for a performance-based compensation plan to comply with the requirements of Section 162(m). *See generally* 26 C.F.R. § 1.162-27.

Among other things, the regulation provides that the requirements for shareholder disclosure and approval are not satisfied "if the compensation *would be paid* regardless of whether the material terms are approved by shareholders." 26 C.F.R. § 1.162-27(e)(4)(i) (emphasis added). This language comes directly from the legislative history of Section 162(m), which makes clear that "compensation does not qualify for the performance based exception if the executive has a *right* to receive the compensation notwithstanding the failure of ... the shareholders to approve the compensation." *See* H.R. Rep. No. 103-213, at 587 (Aug. 4, 1993), *reprinted in* 1993 U.S.C.C.A.N. 1088, 1276 (emphasis added). Thus, as Congress made clear, and as the implementing regulations provide, it is only where an executive would have the right to receive the compensation for which shareholder approval is being sought – thereby rendering shareholder approval irrelevant – that shareholder approval of a plan will be deemed illusory and therefore ineffective under the regulations. Moreover, the phrase "the compensation" in the legislative history and implementing Treasury Regulations for Section 162(m) refers to payments under *the proffered Plan*. There is nothing in the Tax Code or the Treasury Regulations that limits a company's ability to pay cash bonuses under a different plan or arrangement in the event shareholder approval was not obtained, and plaintiff does not claim otherwise.

14

Against this regulatory backdrop, plaintiff asserts that "defendants threatened and intended to make incentive payments even if the Company's stockholders were to disapprove the Plan," which is alleged to have been in violation of the regulation discussed above. (Pl. Op. Br. at 4.) The sole "evidence" that plaintiff offers to support defendants' supposed "intentions" in this regard, however, is the Proxy Statement itself.

What the Proxy Statement actually says is that if shareholders did not vote in favor of the Plan, the Committee would, of necessity, have to consider a number of possible alternatives:

> [i]f the proposal is not approved, the Committee would need to decide whether to implement the Annual Incentive Plan without stockholder approval, resume the previous Executive Profit Sharing Plan, or select another method of delivering short-term incentive compensation.

(Proxy Statement at 27.) There is no "threat" in this statement. The Plan did not grant any contractual rights to any eligible executives if the Plan were not shareholder approved. To the contrary, the Plan was conditioned on approval by a majority vote of the shareholders. (*Id.* at 25; H-1, ¶ 3.) And the terms of the Plan itself provide that "[n]o person shall have any claim or right to receive annual incentive compensation under this Plan, except as provided in accordance with the provisions of this Plan [which include, *inter alia*, that the Plan have been approved by shareholders] and as approved by the Committee." (*Id.* at H-2, ¶ 9.) Nor does the Proxy Statement itself make any commitment to pay under the Plan if shareholder approval were not approved. Thus, because none of the executives had any right to receive payments under the Plan if the shareholders did not approve it, the Plan is consistent with the applicable tax regulations and the requirements of Section 162(m) itself.

Moreover, plaintiff's interpretation of the language quoted from the Proxy Statement above improperly divorces the word "would" from its specific context and the rest of the Proxy Statement itself. Simply put, the Proxy Statement does not say that the Compensation

Committee "would" make payments under the Plan even if it were rejected by shareholders. Instead, the Proxy Statement merely describes the process that the Committee would need to undertake if the Plan were not shareholder approved. If that were to occur, the Proxy Statement explains, the Company "would need to decide" how and by what means it could accomplish what is elsewhere described as the Company's objective of providing its executives with "competitive total compensation." (Proxy Statement at 27.) And because it addresses a contingent future event, the language understandably preserves the Committee's discretion to act appropriately under the circumstances, but makes no firm commitments or predictions as to what it would eventually do.

In this respect, contrary to plaintiff's claim, the Proxy Statement is very different from the statements at issue in both *Shaev* and *Seinfeld*. In both of those cases, the proxy statements manifested to shareholders an actual intent to make potentially non-deductible payments to executives even if the performance goals were not obtained. *See Seinfeld*, 2006 U.S. Dist. LEXIS 14827, at *15 ("we expect to make incentive payments to the executive officers in amounts similar to those that would have otherwise been paid under the EOIP; the difference is that we will lose a portion of the tax deductibility that would have otherwise been available") (internal citations and quotation marks omitted); *Shaev v. Saper*, 320 F.3d 373, 381 (3d Cir. 2003) (holding on motion to dismiss that language in Datascope proxy statement could be read to constitute a "threat"). Here, by contrast, the Proxy Statement simply indicates that the Company would study its options and makes no commitments and sets no expectations as to what the Compensation Committee might eventually choose to do. Plaintiff's effort to twist the words "would need to decide" into something that the Proxy Statement does *not* say – *i.e.*, that the

Compensation Committee "would pay under the Plan" regardless of the shareholder vote – must be rejected.

**(2)     Plaintiff Has Not Established That The Alleged Statement Was Materially Misleading As A Matter of Law.**

In addition to misconstruing the Proxy Statement and the applicable regulations, plaintiff also makes no showing that the underlying issue of tax deductibility was "so obviously important that reasonable minds could not differ on the question of [the] materiality" of statements concerning the tax deductibility of executive compensation. *Seinfeld*, 2006 U.S. Dist. LEXIS 14827, at *17. In *Seinfeld*, the plaintiff (who was represented by the same law firm as is representing the plaintiff in this case) sought summary judgment on the same grounds as here. As noted, the Proxy Statement at issue in that case was reflective of an intention (unlike here) to pay non-tax deductible compensation if the proposed plan was not approved. The plaintiff claimed that this statement was "intended to coerce the stockholders to vote for the Plan." (*See* Compl., *Seinfeld v. Barrett*, C.A. No. 05-298-JJF, at ¶ 14.) And, as in this case, the plaintiff filed a summary judgment motion prior to any discovery, claiming that he was entitled to judgment as a matter of law on the face of the Proxy Statement itself.

Judge Farnan denied the plaintiff's motion on a number of grounds, including that summary judgment was inappropriate because materiality is typically a mixed question of fact and law, and as such, summary judgment on such grounds is improper unless the claimed omission is "'so obviously important to the shareholder's decision that reasonable minds cannot differ on the question of materiality and the underlying facts and the inferences to be drawn from those facts are free from controversy,'" 2006 U.S. Dist. LEXIS 14827, at *17 (*quoting Gould v. Am.-Hawaiian S.S. Co.*, 535 F.2d 761, 771 (3d Cir. 1976)). Despite the language of Intel's proxy statement quoted above, which indicated an intention to pay non-tax deductible compensation if

17

shareholder approval were not obtained, the court held that the plaintiff had not established the materiality of that statement as a matter of law merely by pointing to the language of the proxy statement.

In an apparent effort to avoid the same result here, plaintiff misstates the holding of *Seinfeld*, claiming that the *Seinfeld* court "found the disclosures inadequate." (Pl. Op. Br. at 8.) The *Seinfeld* court made no such finding.

Plaintiff also unpersuasively seeks to distinguish *Seinfeld*. According to plaintiff, the issue of materiality in that case was a question of fact because "plaintiff there had not shown that deductible compensation was important at Intel," but that "3M, by contrast, does emphasize the importance of tax deductible compensation." (Pl. Op. Br. at 9.) In support of this assertion, plaintiff cites to a statement in the Proxy Statement indicating that "'[t]he [Compensation] Committee continues to emphasize performance-based compensation for executives and thus minimize the effect of Section 162(m).'" (*Id.* (*quoting* Proxy Statement at 39).) Plaintiff's selective quotation is highly misleading. The very next three sentences from the Proxy Statement state:

> However, the Committee believes that its primary responsibility is to provide a compensation program that attracts, retains, and rewards the executive talent necessary for the Company's success. Consequently, in any year the Committee may authorize non-performance-based compensation in excess of $1 million. The Committee recognizes that the loss of the tax deduction may be unavoidable under these circumstances.

(Proxy Statement at 39.) Under these circumstances, plaintiff cannot establish, *as a matter of law*, that tax deductibility of compensation is so "obviously important" to the Company that no reasonable shareholder could dispute the materiality of information on this topic. For the same reasons as in *Seinfeld*, plaintiff's motion should be denied.

(3)    **Plaintiff's Extensive Reliance on *Shaev* Is Unavailing.**

Plaintiff's motion relies heavily on the Third Circuit's decision in *Shaev*. This reliance is misplaced for a number of reasons. *First*, the procedural posture of *Shaev* was very different from here, since it involved a motion to dismiss and merely looked to the adequacy of the plaintiff's pleadings. In ruling on the adequacy of the complaint at issue in that case, the Court expressly noted that "we must accept as true Shaev's allegations in his complaint and make all reasonable inferences in his favor." *Shaev*, 320 F.3d at 375. Here, of course, under the procedural posture on this motion for summary judgment, the opposite is true – all reasonable inferences are to be granted to *defendants. See, e.g., Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 343 F.3d 669, 680 (3d Cir. 2003).

*Second*, unlike the situation here, the proxy statement at issue in *Shaev* involved multiple and obvious violations of Section 162(m). Thus, for instance, the amendment to the incentive plan described in the *Shaev* proxy statement was (i) untimely; (ii) involved a performance period too short to meet applicable Treasury Regulations; and (iii) impermissibly granted the company discretion to increase the compensation paid under the plan. As the Court noted, each of these facets of the plan was clearly contrary to the requirements of Section 162(m). *Shaev*, 320 F.3d at 380-81. Indeed, the facts alleged, which the Court credited for purposes of its ruling, suggested that the directors of Datascope (a majority of whom were not independent, unlike here) had engaged in an intentional effort to manipulate the plans at issue to circumvent applicable Treasury Regulations and provide inappropriate and lavish compensation to the company's founder and CEO. Nothing of the sort is at issue here with respect to 3M.

*Finally*, the Third Circuit's holding focused on the alleged threat by the company to "take the *deduction* regardless of shareholder approval." *Id.* at 385 (emphasis added). Here, of course, the Proxy Statement does not express any intention to seek a *deduction* with respect to payments

19

under the Plan even if the Plan is not approved; instead, plaintiff's claim is simply that the Company supposedly "threatened" to make the payments anyway, even if they were *not* deductible. *Shaev* does not even apply to the claim advanced here.

> **2.    Plaintiff Has Not Established That The Proxy Statement Omitted Material Terms.**

In addition to its claim that the Proxy Statement affirmatively represented that payments under the Plan "would" be tax deductible, plaintiff also contends that the Proxy Statement omitted material terms of the Plan and is thus materially misleading as a matter of law. (Pl. Op. Br. at 1, 9.) In fact, however, the Proxy Statement provided shareholders with all of the "material terms" of the Plan and more. For the reasons discussed below, plaintiff's request for judgment as a matter of law as to these claims is plainly without merit.

> **a.    Item 10(a)(2) Did Not Require The Proxy Statement To Contain A New Plan Benefits Table.**

Plaintiff asserts that the Company was required to include a "New Plan Benefits Table" in the Proxy Statement and that the failure to include this table made the Proxy Statement materially misleading. (Pl. Op. Br. at 9, 10.) This contention is based on a clear misunderstanding of the applicable SEC regulations. Item 10(a)(2)(i) of the SEC's Schedule 14A provides, in relevant part, that a company seeking shareholder approval of a compensation plan should set forth, in "tabular format," "the benefits or amounts that will be received by or allocated to [participants in the Plan] under the plan being acted upon, *if such benefits or amounts are determinable.*" 17 C.F.R. § 240.14a-101, Item 10(a)(2)(i) (emphasis added). The regulation further provides that if the amounts cannot be determined on a prospective basis, the proxy statement should "state the benefits or amounts which would have been received by or allocated ... for the last completed fiscal year if the plan had been in effect," but again, only "*if such benefits or amounts may be determined.*" 17 C.F.R. § 240.14a-101, Item 10(a)(2)(iii)

(emphasis added). The SEC has provided additional guidance on the circumstances under which benefits or amounts are "determinable" for purposes of these regulations. As the SEC has explained, where awards under a plan are discretionary, they are not "determinable" within the meaning of either provision, and under such circumstances, no "New Benefits Table" is required. *See* SEC Division of Corporation Finance, <u>Manual of Publicly Available Telephone Interpretations</u>, Main Manual, Section N, "Proxy Rules and Schedule 14A," July 1997, Number 34 "Schedule 14A, Item 10(a)(2)(iii)" (attached as Exhibit A to Declaration of Philip A. Rovner ("Rovner Decl.").

That is precisely the situation here. Under the clear terms of the Plan, the actual amount that will be paid to each eligible Plan participant is left entirely to the discretion of the Compensation Committee of 3M's Board of Directors, subject to the maximum amount specified in the Plan. (*See* Proxy Statement at H-1-H-2, ¶ 5 (providing that, subject to a maximum amount, the Compensation Committee "shall determine the amount of each Participant's annual incentive opportunity for each Plan Year in its discretion" and that "[n]otwithstanding anything to the contrary in this Plan document, the Committee in its sole discretion may decide to reduce the annual incentive payable to a Participant for any Plan Year below the applicable maximum amount payable [set by the Plan].").) Thus, as the Proxy Statement explained, "[a]ll elements of this compensation are determined by the Compensation Committee of the Board of Directors...." (Proxy Statement at 32.) In light of these features of the Plan, a "New Benefits Table" was plainly not required under the SEC's regulations.

### b. The Proxy Statement Disclosed the Maximum Bonuses Payable Under the Plan.

Plaintiff also challenges the Proxy Statement on the grounds that it did not set forth the amounts payable to each participant under the Plan. (Pl. Op. Br. at 9-10.) Once again, however,

this claim is based on a misreading of the applicable regulations.  In fact, the Treasury

Regulations governing shareholder approval of incentive programs require a proxy statement to

include either the "maximum amount of compensation that could be paid to any employee *or* the

formula used to calculate the amount of compensation to be paid to the employee if the

performance goal is attained."  26 C.F.R. § 1.162-27(e)(4)(i) (emphasis added).  The proxy

statement need only contain one of these two metrics, not both.  *Id.*

Here, the Proxy Statement and attached Plan document clearly describe the maximum

bonus payable to each participant.  The Proxy Statement expressly states that "[t]he maximum

annual incentive payable to any Named Executive Officer for any Plan Year shall be one-quarter

of one percent (0.25%) of the Adjusted Net Income for such Plan Year, while the maximum

annual incentive payable for any Plan Year to any Participant who is not a Named Executive

Officer shall be one-tenth of one percent (0.10%) of the Adjusted Net Income for such Plan

Year." (Proxy Statement at H-1; ¶ 5; *see also id.* at 26.)  "Adjusted Net Income" is defined in

the Proxy as the "net income of 3M as reported in the Consolidated Statement of Income as

adjusted to exclude special items."  (*Id.* at H-1, ¶ 2.)

Plaintiff nevertheless complains that the Proxy Statement does not "explain how net

income was to be 'adjusted.'"  (Pl. Op. Br. at 10.)  This claim is without merit.  "Net income" is

a line item on 3M's annual consolidated statement of income included in the Company's annual

financial statements, which are prepared in accordance with generally accepted accounting

principles ("GAAP"), filed with the SEC, and furnished to each of its shareholders.  The concept

of "special items," in turn, is a common finance concept that encompasses items that are non-

recurring, infrequent, or unusual in nature and that do not reflect income generated from the

company's ongoing operations.  *See, e.g.*, Pamela P. Peterson & Frank J. Fabozzi, <u>Analysis of</u>

22

<u>Financial Statements</u>, pp. 67-68 (2d ed. (2006)) ("In general, a company's earnings and cash flows should be generated from the operations of its business, rather than through nonrecurring means. A close examination of the sources of revenues in the income statement and notes may reveal nonoperating gains and losses. These nonoperating items are presented under various names, including 'special,' 'nonrecurring,' and 'unusual.'") (attached as Exhibit B to Rovner Decl.). The inclusion of such special or extraordinary items may result in a misleading and distorted picture of a company's underlying business performance and trends.

Making an adjustment to exclude special items in connection with the Plan simply makes common sense. If such an adjustment were not made, payments could easily be affected by entirely unexpected or fortuitous events unconnected to the company's ongoing operations, that is, matters for which an eligible executive would have had no responsibility. This, in turn, would be contrary to one of the stated purposes of the Plan, which was to link Plan participants' pay to their "performance and contributions to the Company." (Proxy Statement at 33.)

Because of the unplanned or unexpected nature of "special items," it is obviously not possible to identify them in advance or define them with greater specificity, as plaintiff appears to suggest is necessary. Notably, however, the concept of special items is very familiar to 3M's shareholders: the Company publishes and files with the SEC, on a quarterly basis, financial results that show and explain the Company's operating performance, including net income *minus special items*. As the Company explains in those filings,

> [i]n addition to reporting financial results in accordance with U.S. generally accepted accounting principles (GAAP), the company also discusses non-GAAP measures that exclude special items … Special items represent significant charges or credits that are important to an understanding of the company's ongoing operations. The company uses these non-GAAP measures to evaluate and manage the company's operations. The company

believes that discussion of results excluding special items provides
a useful analysis of ongoing operating trends.

(*See, e.g.*, 3M Form 8-K dated 4/26/07 at 12; 3M Form 8-K dated 1/30/07 at 8, 21; 3M Form 8-K

dated 10/20/06 at 8-9, 10-11, 22) (Attached as Exhibit C to Rovner Decl.) Thus, for instance, on

April 26, 2007, the Company announced the results of its first quarter of 2007, and provided a

calculation of net income for the quarter excluding special items. During the first quarter, as the

Company explained, the special items excluded from net operating income included a one-time

gain associated with the Company's sale of a pharmaceutical business in Europe, certain

restructuring charges, and costs associated with various environmental regulatory developments.

(*See* 3M Form 8-K dated 4/26/07 at 12-14.)

    Plaintiff also asserts that the Proxy Statement was materially misleading in that it "did not

include the definitions of the performance metrics." (Pl. Op. Br. at 10.) But the Plan for which

shareholder approval was sought does not contain defined "performance metrics" and nothing in

the section of the Proxy Statement addressing the Plan, or the Plan itself, makes any reference to

such metrics. Instead, plaintiff appears to be confusing the "performance metrics" associated

with the "annual incentive plan," which is not the Executive Annual Incentive Plan, but instead

refers to the Company's entire annual incentive program that is intended to replace the current

profit sharing plans for its other officers and non-executives. (Compare Proxy Statement at 25-

27 (describing material terms of the Executive Annual Incentive Plan) with *id.* at 34 (describing

plan applicable to other executives and eligible employees).)

    For all of these reasons, plaintiff is not entitled to judgment as a matter of law as to this

purported "omission" and its Motion on this claim must be denied.

c.    **The Proxy Statement Describes the Class of Executives For Whom Shareholder Approval Is Necessary For Payments Under the Plan to Be Tax Deductible.**

Finally, the Proxy Statement contains all material terms relating to the identity of the executives for whom a Section 162(m) exemption is being sought. The applicable Treasury Regulations require a company to disclose, *inter alia*, "the employees eligible to receive compensation" under a performance goal, and provides in this regard that "[a] general description of the class of eligible employees by title or class is sufficient, such as the chief executive officer and vice presidents, or all salaried employees, all executive officers, or all key employees." 26 C.F.R. § 1.162-27(e)(4)(ii).

Here, the Plan indicates that it applies to the Company's five Named Executive Officers, who are identified as "those individuals covered by the SEC's disclosure requirements for executive compensation (as reflected in the Summary Compensation Table in this proxy statement)." (Proxy Statement at 25.) Importantly, it is *only* with respect to certain of these individuals that any Section 162(m) exemption would apply. That is because Section 162(m) itself only limits the deductibility of executive compensation in excess of $1 million to the chief executive officer and the three most highly-compensated employees of a company whose compensation is required to be reported to shareholders in the Proxy Statement, other than the chief executive officer and the chief financial officer, 26 C.F.R. § 1.162-27(c)(2)[4]– *i.e.*, the same group as the Named Executive Officers in the Proxy Statement, other than the chief financial officer. Section 162(m) has no applicability to compensation paid, even if in excess of $1

---

[4] On June 18, 2007, the Office of Division Counsel/Associate Chief Counsel (Tax Exempt & Government Entities) of the U.S. Treasury Department reconciled Section 162(m) with a change in the SEC's proxy reporting requirements by clarifying that the persons subject to Section 162(m) are the company's chief executive officer and the three most highly compensated officers other than the chief executive officer and the chief financial officer. IRS Notice 2007-49, I.R.B. 2007-25 (June 18, 2007). Prior to this clarification, it was unclear whether the chief financial officer—who would always be a Named Executive Officer—was subject to Section 162(m).

million, to any other officers and employees. Thus, for purposes of disclosing the "material terms" of the performance goals for which shareholder approval was necessary for tax reasons, the Proxy Statement clearly disclosed both the class of eligible executives – Named Executive Officers, other than the chief financial officer – and the number of such executives – four.

Although it was not relevant to the issue of obtaining shareholder approval for tax deductibility under Section 162(m), the Proxy Statement also disclosed the class of other executives eligible to participate in the Plan – *i.e.*, the other senior executives whose compensation is set by the Compensation Committee. (Proxy Statement at 25; H-1, ¶¶ 2, 4.)

Plaintiff nevertheless complains that, in purported violation of Schedule 14A, the "approximate number" of the executives eligible to participate in the Plan other than the Named Executive Officers was not specifically set forth in the Proxy Statement. But as demonstrated above, there was no need to do so under the applicable Treasury Regulations. And even if this information had been omitted, plaintiff has made no pretense of showing, nor could it, that any such omission was "so obviously important that reasonable minds could not differ on the question of materiality." *Seinfeld*, 2006 U.S. Dist. LEXIS 14827, at *17. Indeed, the logic of plaintiff's argument effectively concedes that such an omission would *not* have been material under these circumstances. After all, as plaintiff elsewhere stresses, the issue of whether a particular disclosure regarding compensation would be material to the Company's shareholders as a matter of law is dependent on the potential tax deductibility of that compensation under Section 162(m). (*See, e.g.*, Pl. Op. Br. at 9 (attempting to distinguish *Seinfeld* on the grounds that the alleged misstatement was not material as a matter of law in that case because there had been no showing that deductibility of compensation was important to Intel, but that by contrast, statements in the Proxy Statement here would be material because tax deductibility was

26

important to the Company).)  Here, however, there is no dispute that disclosure of the

approximate number of eligible executives (*i.e.*, those other than the Named Executive Officers

to whom Section 162(m) applies) would have absolutely no bearing on the deductibility of any

compensation awarded those executives, either under the Plan or otherwise.[5]

In this regard, plaintiff is even more clearly *not* entitled to summary judgment than the

plaintiff in *Seinfeld*, since in *Seinfeld*, there was at least some connection between the alleged

misrepresentation (*i.e.*, that the company expected to make payments even if the performance

goals were not shareholder approved) and tax deductibility, which in turn might or might not

have been important to shareholders.  *Seinfeld*, 2006 U.S. Dist. LEXIS 14827, at *17.  Here, by

contrast, any payments made to non-Named Executive Officers would *always* be tax deductible,

regardless of what the Proxy Statement disclosed or did not disclose about those executives, and

regardless of whether shareholders approved or disapproved the Plan.  *See* 26 U.S.C. § 162(m).

At a bare minimum, on the record presented by plaintiff, there is clearly a genuine issue of fact

as to whether a reasonable shareholder would view this information as "material" for purposes of

Rule 14a-9.  Plaintiff's claim that it is entitled to judgment as a matter of law must be rejected.

> **3.    Plaintiff Has Not Established A Causal Link Between the Alleged
> Misstatements and Any Injury Purportedly Suffered by the
> Company.**

To prevail in a Section 14(a) claim, plaintiff must prove that there is a causal link

between the alleged misstatements in the proxy statement and the injury the plaintiff claims was

---

[5] Plaintiff's reliance on *dicta* in *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 641 n.17 (3d Cir. 1989), is misplaced.  In fact, as the Third Circuit explained in the very next paragraph, under the U.S. Supreme Court's decision in *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976), the test for whether an alleged omission is "material" is whether there is a "'substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.'"  890 F.2d at 641 (*quoting TSC Indus., Inc.*, 426 U.S. at 449).  And because this issue presents a "mixed question of fact and law," the Third Circuit cautioned that it may be resolved as a matter of law "[o]nly when…reasonable minds could not differ" on the issue of materiality.  *See In re Craftmatic Sec. Litig.*, 890 F.2d at 641 (citing cases).

or would be suffered by the Company. *See generally Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1099 (1991) (reversing grant of summary judgment where alleged transaction would have occurred regardless of alleged misstatements in proxy statement); *In re Digital Island Sec. Litig.,* 223 F. Supp. 2d 546, 559 (D. Del. 2002) (Sleet, J.) (dismissing claim where plaintiffs' votes solicited by means of an allegedly defective proxy statement were not necessary for the success of the merger), *aff'd,* 357 F.3d 322 (3d Cir. 2004); *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 517-518 (D. Del. 2001) (denying motion for summary judgment where plaintiffs had not shown that injury would have occurred but for the alleged misstatements). Thus, where the alleged injury would have occurred regardless of the alleged defects in the Proxy Statement, plaintiff cannot show loss causation as a matter of law.

Here, plaintiff has not established this element as a matter of law with respect to the alleged deficiencies in the Proxy Statement. Plaintiff has made no factual showing that a reasonable shareholder would have voted any differently but for the alleged deficiencies in the Proxy Statement. And there is, at a minimum, a clear fact question as to whether a reasonable shareholder's vote would have changed under the particular circumstances presented here, where the Plan presents obvious benefits to the corporation and its shareholders. *In re Reliance Sec. Litig.*, 135 F. Supp. 2d at 517-18 (denying motion for summary judgment where "plaintiffs have not shown that but for [the alleged misstatements], the Coles would have voted differently."). In this regard, it is noteworthy that the Proxy Statement was closely scrutinized before the Annual Meeting by various sophisticated proxy advisory firms such as Institutional Shareholder Services ("ISS") and PROXY Governance, Inc., each of which is familiar with the requirements of Section 162(m) and its implementing regulations and would be motivated to identify any material non-compliance with those provisions in providing its recommendations to 3M

shareholders. Here, having closely reviewed the Proxy Statement, ISS and PROXY Governance, Inc. both recommended that 3M shareholders vote their shares in favor of the Plan. (Larson Decl. at ¶ 7, Exhs. A & B.)

### 4.     Plaintiff Has Not Established That Defendants Acted With The Requisite State Of Mind.

Under Third Circuit precedent, to prevail on a Section 14(a) claim, a plaintiff must prove that, at a minimum, "defendants acted negligently with respect to the facts in the proxy statement." *In re Reliance Sec. Litig.*, 135 F. Supp. 2d at 511 (*citing Gould v. Am.-Hawaiian S.S. Co.*, 535 F.2d 761, 777-78 (3d Cir. 1976)). This is an inherently-fact intensive inquiry that examines the reasonableness of each individual defendant's conduct in light of all of the facts and circumstances presented, including the defendant's "particular position with the corporation and his relationship to the pertinent information held to be erroneously or incompletely stated in the proxy materials," *Gould v. Am.-Hawaiian S.S. Co.*, 351 F. Supp. 853, 865 (D. Del. 1972), the good-faith reliance on legal and financial experts, *id.*, and other relevant factors bearing on the overall facts and circumstances surrounding the alleged violations. *In re Reliance Sec. Litig.*, 135 F. Supp. 2d at 511-16. A claim of negligence may not simply be presumed as a matter of law. *See, e.g., Shidler v. All Am. Life & Fin. Corp.*, 775 F.2d 917, 926 (8th Cir. 1985) ("strict liability is not the appropriate standard of liability under the statute and its appurtenant SEC rule 14a-9.").

Here, plaintiff has not provided a scintilla of evidence that any of the individual defendants acted negligently, let alone with any higher degree of culpability. Plaintiff makes no evidentiary submission as to the process the Compensation Committee followed in determining to recommend the Plan to shareholders, the process by which the Proxy Statement itself was created, reviewed, and disseminated, what role each individual defendant had with respect to the

preparation and approval of the Plan and the Proxy Statement, and no evidence establishing that there are no genuine issues of material fact as to these issues. Indeed, plaintiff's Opening Brief does not even contain any discussion of the applicable mental state, much less claim that this is an issue as to which there could be no genuine dispute of fact with respect to each of the individual defendants' conduct in this case. In fact, the process here with respect to the consideration and approval of the Plan and the Proxy Statement was entirely appropriate and reasonable. (*See* Coffman Decl. at ¶¶ 4-8; Larson Decl. at ¶ 4.) Plaintiff tenders no evidence to the contrary, and its motion must also be denied on this ground alone.

### 5.    Plaintiff Has Not Established An Entitlement As A Matter of Law To Injunctive Relief.

Finally, plaintiff makes no effort to satisfy its burden of showing that it is entitled to injunctive relief. Injunctive relief in private securities actions is "to be determined according to traditional principles." *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 64 (1975). Among the traditional requirements for a permanent injunction are a showing of irreparable harm and the inadequacy of remedies at law. *See, e.g.*, *Pub. Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals*, 913 F.2d 64, 82 (3d Cir. 1990); *see also Rondeau*, 422 U.S. at 64-65 (upholding the district court's grant of summary judgment against plaintiff because plaintiff had not made a showing of "irreparable harm"). A court should also consider a balancing of hardships if the injunction were to be granted, as well as the public interest in the matter. *Pub. Interest Research Group*, 913 F.2d at 82. The burden is on the party seeking injunctive relief to show the necessary elements before such relief will be granted. *Rondeau*, 422 U.S. at 63-65.

Plaintiff ignores all of this, and proffers nothing to show irreparable harm from the allegedly misleading Proxy Statement. Instead, plaintiff conclusorily asserts that "[a]n injunction will not irreparably interfere with 3M's compensation procedures" purportedly

because, if the Court were to grant the injunction, "the directors could re-solicit stockholder approval in March 2008 with a proxy statement that does not violate 15 U.S.C. § 78n(a) and Delaware law." (Pl. Op. Br. at 14.)

This gets the matter precisely backwards. The test for the appropriateness of injunctive relief is whether the Company (on whose behalf the relief is being sought) would be irreparably harmed in the *absence* of the requested relief – not whether the *relief*, if granted, would cause it to *suffer* irreparable harm. Moreover, at a bare minimum, there are substantial questions as to whether equitable relief could be warranted here given plaintiff's own conduct. Notwithstanding having received the Proxy Statement nearly five weeks before the Annual Meeting, plaintiff did absolutely nothing to inform the Company of its concerns, and made no effort to seek any relief prior to the shareholder vote. Under these circumstances, equitable relief would not be appropriate. *See, e.g., Valenti v. Mitchel*, 962 F.2d 288, 299 (3d Cir. 1992) (affirming denial of equitable relief on basis of principle that "equity aids the vigilant, not those who rest on their rights.") (internal citation, quotation marks, and alteration omitted); *Ash v. Baker*, 392 F. Supp. 368, 372 (E.D. Pa. 1975) (In a Section 14(a) case, denying requested equitable relief and noting that "[p]laintiff is guilty of laches and bad faith in bringing this matter to the attention of the Court after the proxy solicitation materials have been sent to the shareholders."), *aff'd*, 530 F.2d 963 (3d Cir. 1976).

## C.    Plaintiff Is Not Entitled To Judgment As A Matter Of Law With Respect To Its Delaware Law Claims.

Plaintiff alleges that the purported material misstatements and omissions also breached the directors' and officers' duties of disclosure under Delaware law. (Pl. Op. Br. at 11.) This duty has been characterized as "a subset of a director's fiduciary duties of loyalty and care." *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 986 (Del. Ch. 2000). In general, the

31

elements of a claim under Delaware law are substantially the same as a claim under Section 14(a). *See, e.g., Krim v. ProNet, Inc.*, 744 A.2d 523, 527 (Del. Ch. 1999). Further, plaintiff must also establish that defendants were at least grossly negligent in issuing the alleged misstatements and omissions. *See Metro Communication Corp. BVI v. Advanced Mobilecomm Techs., Inc.*, 854 A.2d 121, 157 (Del. Ch. 2004). The record is barren on this element, as discussed above.

For all of the reasons discussed above, plaintiff has failed to establish each and every one of the elements of its Section 14(a) claims as a matter of law, and, for the same reason, is not entitled to judgment as a matter of law on its claims under Delaware law as well. *See Seinfeld*, 2006 U.S. Dist. LEXIS 14827, at *20-21.

## CONCLUSION

For all the foregoing reasons, defendants respectfully request that this Court deny

plaintiff's Motion for Summary Judgment.


POTTER ANDERSON & CORROON LLP          RICHARDS LAYTON & FINGER



By: /s/ Philip A. Rovner                       By: /s/ Steven J. Fineman
     Philip A. Rovner (#3215)                  Daniel A. Dreisbach (#2583)
     Hercules Plaza                            Steven J. Fineman (#4025)
     P.O. Box 951                              Geoffrey G. Grivner (#4711)
     Wilmington, DE  19899                     One Rodney Square
     (302) 984-6000                            P. O. Box 551
     provner@potteranderson.com                Wilmington, DE 19801
                                                  (302) 651-7700
*Attorneys for George W. Buckley, Patrick D.*      dreisbach@rlf.com
*Campbell, Moe S. Nozari, Frederick J.*            fineman@rlf.com
*Palensky, and Richard F. Ziegler*                 grivner@rlf.com

OF COUNSEL:                                *Attorneys for 3M Company, Linda G.*
                                           *Alvarado, Vance D. Coffman, Michael L.*
Thomas F. Ryan                             *Eskew, W. James Farrell, Herbert L. Henkel,*
Walter C. Carlson                          *Edward M. Liddy, Robert S. Morrison, Aulana*
James W. Ducayet                           *L. Peters, and Rozanne L. Ridgway*
Sharlene P.B. Hobson
SIDLEY AUSTIN LLP                          OF COUNSEL:
One South Dearborn
Chicago, Illinois 60603                    Paul H. Dawes
(312) 853-7000                             LATHAM & WATKINS LLP
                                           140 Scott Drive
Dated:  September 10, 2007                 Menlo Park, California  94025
817930
                                           J. Christian Word
                                           Kevin H. Metz
                                           LATHAM & WATKINS LLP
                                           555 Eleventh St. NW
                                           Washington, DC 20004

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on September 10, 2007, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY

Seth D. Rigrodsky, Esq.
Brian D. Long, Esq.
Rigrodsky & Long, P.A.
919 N. Market Street, Suite 980
Wilmington, DE 19801
srigrodsky@rigrodskylong.com; blong@rigrodskylong.com

Daniel A. Dreisbach, Esq.
Steven J. Fineman, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
dreisbach@rlf.com; fineman@rlf.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899
(302) 984-6000
E-mail: provner@potteranderson.com