IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INSULATORS AND ASBESTOS WORKERS LOCAL NO. 14, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| -against- | ) ) | Case No.: 07-cv-00416-GMS |
| GEORGE W. BUCKLEY, LINDA G. ALVARADO, VANCE D. COFFMAN, MICHAEL L. ESKEW, W. JAMES FARRELL, HERBERT L. HENKEL, EDWARD M. LIDDY, ROBERT S. MORRISON, AULANA L. PETERS, ROZANNE L. RIDGEWAY, PATRICK D. CAMPBELL, MOE S. NOZARI, FREDERICK J. PALENSKY, RICHARD F. ZIEGLER, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| And | ) ) | |
| 3M COMPANY, | ) ) ) | |
| Nominal Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

September 20, 2007

RIGRODSKY & LONG, P.A.
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
919 North Market Street, Suite 980
Wilmington, DE 19801
T: 302.295.5310
srigrodsky@rigrodskylong.com
blong@rigrodskylong.com
    Attorneys for Plaintiff

<u>Of Counsel</u>:
Barrack, Rodos & Bacine
Alexander Arnold Gershon
Regina M. Calcaterra
Gloria Kui Melwani
1350 Broadway, Suite 1001
New York, New York 10018
(212) 688-0782

Barrack, Rodos & Bacine
Daniel E. Bacine
Two Commerce Square
2001 Market Street – Suite 3300
Philadelphia, Pennsylvania 19103
(215) 963-0600

## TABLE OF CONTENTS

Table of Cases and Authorities .................................................................................... (ii)

I.   UNDER THIRD CIRCUIT AUTHORITY THE
     PROXY STATEMENT IS, AS A MATTER OF LAW,
     INCOMPLETE, INADEQUATE, FALSE AND MISLEADING .................................... 1

     A.   The Threat To Pay The Bonuses Anyway ................................................ 1
     B.   Omission of the Maximum Bonus ............................................................. 3
     C.   Lack of Performance Metrics Precludes a Tax Deduction ....................... 5
     D.   There Is No New Plan Benefits Table ....................................................... 5
     E.   The Proxy Statement Omits to Disclose the Number of Participants ...... 6

II.  THERE IS A CAUSAL LINK ....................................................................................... 9

III. THERE IS NO REQUIREMENT OF CULPABILITY .................................................. 9

IV.  THE INDIVIDUAL DEFENDANTS WERE
     NEGLIGENT AS A MATTER OF LAW ...................................................................... 11

V.   PRE-SUIT DEMAND IS EXCUSED ........................................................................... 12

VI.  THERE ARE NO ISSUES OF MATERIAL
     FACT, AND PLAINTIFF IS ENTITLED TO
     JUDGMENT AS A MATTER OF LAW ....................................................................... 13

CONCLUSION ................................................................................................................ 14

## TABLE OF CASES AND AUTHORITIES

*In re Anderson Clayton Shareholder Litigation*,
519 A.2d 669 (Del.Ch. 1986) ............................................................................. 12

*Ash v. LFE Corp.*,
525 F.2d 215 (3rd Cir. 1975) .............................................................................. 10

*California Public Employees' Retirement System v. Chubb Corp.*,
394 F.3d 126 (from the dissent) (3rd Cir. 2004) ................................................. 9

*In re Craftmatic Sec. Litg.*,
890 F.2d 628 (3d Cir. 1989) ............................................................................ 7, 8

*Credit Suisse Securities (USA) LLC v. Billing*,
___ U.S.___, 127 S. Ct. 2383 (2007) .................................................................. 7

*Executive Compensation Disclosure*,
1992 WL 301259 (SEC, Oct. 16, 1992) ............................................................. 6

*Gould v. American Hawaiian Steamship Co.*,
351 F. Supp. 853 (D.Del. 1972) ..................................................................... 9, 10
affd. in part, vacated on other grounds in part,
535 F.2d 761 (3rd Cir. 1976)

*Halpert Enterprises, Inc. v. Harrison*,
2007 WL 486561 (S.D.N.Y 2007) .................................................................... 13

*Lewis v. Vogelstein*,
699 A.2d 327 (Del.Ch. 1997) .............................................................................. 7

*Maldonado v. Flynn*,
597 F.2d 789 (2d Cir. 1979) ................................................................................ 7

*Openwave Systems, Inc., Shareholder Deriv. Litigation*,
2007 WL 1456039 (N.D. Cal. 2007) ................................................................ 13

*In re Reliance Sec.Lit.*,
135 F. Supp. 2d 480 (D.Del. 2001) .................................................................... 9

*Resnik v. Swartz*,
303 F.3d 147 (2d Cir. 2002) ................................................................................ 7

*SEC v. Calvo*,
378 F.3d 1211 (11th Cir. 2004) .................................................................. 6

*Shaev v. Saper*,
320 F.3d 373 (3rd Cir. 2003) .................................................... 1, 2, 4, 11, 12

*In re Tri-Star Pictures, Inc. Litig.*,
1990 WL 82734 (Del.Ch. 1990). .............................................................. 12

*TSC Industries v. Northway, Inc.*,
426 U.S. 438 (1976) ............................................................................... 8, 9

*Vides v. Amelio*,
265 F. Supp. 2d 273 (S.D.N.Y 2003) ....................................................... 12

*In re Walt Disney Deriv. Litigation*,
825 A.2d 275 (Del.Ch. 2003) .................................................................. 12

*In re Walt Disney Deriv. Litigation*,
906 A.2d 27 (Del. 2006) .......................................................................... 12

*In re Westinghouse Sec. Lit.*,
832 F. Supp. 989 (W.D. Pa. 1993) ........................................................... 12

## STATUTES

26 C.F.R. §1.162-129(e)(4)(i) ......................................................................... 3
26 C.F.R. §1.162-27(e)(2)(i)-(iii) ............................................................. 4, 5, 13
26 U.S.C. §162(m) ........................................................................................... 5

17 C.F.R. §240.14a-9 ....................................................................................... 9
17 C.F.R. §240.14a-101 (Item 10(a)(1)) ......................................................... 6
17 C.F.R. §240.14a-101 (Item 10(a)(2)) ....................................................... 6, 7

§11 of the Securities Act of 1933, 15 U.S.C. §77k ....................................... 9
§14(a) of the Securities Exchange Act, 15 U.S.C. §78n(a) .......................... 9

H.R.Rep. No. 103-213, 1993 WL 302291 (Aug. 4, 1993) ............................ 2

**Other Authorities**

Brudney, A Note On Materiality And Soft Information Under
The Federal Securities Laws, 75 Va. L. Rev. 723 (1989) ............................................ 7

Hamermesh, Calling Off The Lynch Mob : The Corporate
Director's Fiduciary Duty Of Disclosure, 49 Vand. L. Rev. 1087 (1996) .......... 10, 11

**Miscellaneous**

*Manual of Publicly Available Telephone Interpretations, Part N, No. 34* ................ 6

By this summary judgment motion,[1] plaintiff seeks to enjoin the payment of incentive bonuses that were approved by a misinformed stockholder vote, caused by a false or misleading proxy statement. Plaintiff urges that the court enjoin the payments before they are begun in January or February 2008.

## I. UNDER THIRD CIRCUIT AUTHORITY THE PROXY STATEMENT IS, AS A MATTER OF LAW, INCOMPLETE, INADEQUATE, FALSE AND MISLEADING

### A. The Threat To Pay The Bonuses Anyway

Under *Shaev v. Saper*, 320 F.3d 373, 381 (3rd Cir. 2003), the 3M Proxy Statement is false or misleading as a matter of law. The Proxy Statement threatens to pay incentives even if the stockholders reject the 2007 3M Annual Incentive Plan (the "Plan") (Complaint ¶20), but it represents that if stockholders approve the Plan, incentive bonuses would be deductible. (PB at 8-9) As the Third Circuit held, with such a threat, "[r]egardless of the shareholders' approval, the bonus would not have been deductible."

Defendants argue that the regulatory language quoted by the Third Circuit (320 F.3d at 381; PB at 7), applies "only where an executive would have the right to receive the compensation, for which shareholder approval is being sought." (DB at 14.) The only

---

1. In this reply brief, plaintiff refers to its opening brief as "PB" and to the defendants' answering brief as "DB." Plaintiff refers to the defendants' brief in support of their motion to dismiss for failure to make or excuse demand as "DB Demand." Plaintiff also relies upon the additional declaration of A. Arnold Gershon, dated September 20, 2007 ("Gershon Decl. II") with exhibits.

- 1 -

support defendants offer for this argument is a quote from the legislative history (DB at 14):

> [C]ompensation does not qualify for the performance based exception if the executive has a *right* to receive the compensation notwithstanding the failure of . . . the shareholders to approve the compensation.... [citation omitted] (emphasis added).

But the "would have the right" argument was rejected by the Third Circuit. Indeed, the legislative history that defendants rely on, H.R.Rep. No. 103-213, 1993 WL 302291 (Aug. 4, 1993), at 587-88 (see Gershon Decl. II, ¶3 , Exh. 1), was quoted by the Third Circuit in *Shaev*, 320 F.3d at 383 (PB at 10-11). So the court there was well aware of the legislative history quoted by defendants. Yet the court rejected the "would have the right" theory. In *Shaev* the proxy statement reported that the committee "may grant" another bonus if the stockholders do not approve. At bar, the Proxy Statement reports that 3M "would need to decide" how to "deliver [ ] short term incentive compensation" if the stockholders do not approve. The two slightly different forms of language are identical in meaning. If defendants' "would have the right" theory were correct, it would open the door to wide ranging corporate coercion and allow total evasion of the statutory and regulatory scheme.

    At bar, defendants concede that, if the Plan is not approved, the Company would need to decide "how and by what means," not *whether*, to pay the short term incentives. (DB at 16). In this connection, defendants argue that since a company can have simultaneous plans for both deductible and non-deductible bonuses, it therefore follows that a company can use a non-deductible bonus plan as a consolation prize to the

disappointed executive if the stockholders reject the plan. Plaintiff submits that, if that is the expectation, then the bonus is not deductible even if the stockholders approve it, and that the Third Circuit so held in *Shaev v. Saper*. Defendants' argument is yet another program to encourage corporate coercion, proffered without a shred of authority.

Defendants' attempt to distinguish *Shaev v. Saper* upon its facts falls flat. (DB at 19.) At bar, and in *Shaev v. Saper*, the defendants threatened to pay the bonus even if the stockholders rejected the plan, and the plan gave too much discretion to the compensation committee. The existence of other defects in the plan in *Shaev* do not change the force of the Third Circuit's reasoning. Nor does the context, i.e., defendant's motion to dismiss as against plaintiff's motion for summary judgment.

Finally, of course, the regulation does not use the "would have the right" language of the conference report. The regulation prohibits the deduction simply "if the compensation would be paid regardless." 26 C.F.R. §1.162-129(e)(4)(i).

B.     **Omission of the Maximum Bonus**

According to the Proxy Statement the maximum bonus is a percentage of the Adjusted Net Income. Specifically, the Plan provides in ¶2(a):

> "Adjusted Net Income" means the net income of 3M as reported in the Consolidated Statement of Income as adjusted to exclude special items.

Although the Plan refers to the Consolidated Statement of Income for the source of "net income," it provides no such reference for "special items," which is an uncertain term that is not defined by Generally Accepted Accounting Principles ("GAAP"), or by SEC regulations.

Defendants argue that 3M's Form 8-Ks that contain presentations of non-GAAP financial measures using "special items" provide the information that the Proxy Statement omitted. There are two reasons that the court should reject this argument.

First, the Proxy Statement does not refer the stockholders to the Form 8-Ks. In *Shaev v. Saper, supra*, 320 F.3d at 381, the Third Circuit held:

> We hold that the cryptic references in the proxy statement were insufficient to satisfy Datascope's disclosure obligations under Rule 14a-9. Material not included in the proxy statement is generally not charged to the knowledge of the stockholder. ...That an investor could hypothetically conduct research to clarify ambiguities and discover omissions in the proxy statement does not relieve the Board of its obligations under Rule 14a-9. [Citations omitted.]

At bar, a reasonable stockholder would know that a reference to "net income" meant "as reported in the Consolidated Statement of Income" according to GAAP. If the Proxy Statement could disclose that, it could have referred to "special items" as reported in the Form 8-Ks.

Second, the uncertainty surrounding the phrase "special items" is underscored in the Form 8-Ks attached as Exhibit C to the Rovner Declaration. The Form 8-K states:

> The determination of special items may not be comparable to similarly titled measures used by other companies.

Moreover, the tables reflecting "special items" are unaudited statements of non-GAAP measures, meaning that they cannot comply with 26 C.F.R. §1.162-27(e)(2)(i)-(iii), which require bonus plans to be pre-established, objective, and non-discretionary. Using

vague, undefined "special items" to calculate a maximum bonus does not comply with this regulation and thus causes the Company the loss of the tax deduction.

C.  **Lack of Performance Metrics Precludes a Tax Deduction**

Plaintiff has alleged that the Plan contained performance metrics, as stated on page 34 of the Proxy Statement, but that they were not disclosed in sufficient detail. Now the defendants say that the page 34 metrics applied to executives other than the Named Executive Officers and that "the Plan for which shareholder approval was sought does not contain defined 'performance metrics'." (DB at 24) The Treasury Regulations require that a performance goal must be "established in writing ... not later than 90 days after the commencement of the [year]." 26 C.F.R. §1.162-27(e)(2)(i). They also require that the goal must be objective, i.e., that "a third party having knowledge of the relevant performance results could calculate the amount to be paid to the employee." 26 C.F.R. §1.162-27(e)(2)(ii). This Plan has no performance goals at all. No tax deduction is available, and it is false to represent that bonuses under this Plan qualify for tax deductions.

D.  **There Is No New Plan Benefits Table**

Pursuant to the rules and regulations of the Securities and Exchange Commission, there are mandatory disclosures that must be included in a proxy statement when directors solicit stockholder approval of a compensation plan, whether or not such approval is sought for tax purposes.

The New Plan Benefits Table has been required by SEC regulations for many years. *Executive Compensation Disclosure*, 1992 WL 301259 at *27, *58-59 (SEC, Oct.

16, 1992); 17 C.F.R. §240.14a-101 (Item 10(a)(2)). Defendants argue that they were exempt from this requirement because the Plan is discretionary. But the only citation that they provide is to the *Manual of Publicly Available Telephone Interpretations, Part N, No. 34*. The *Manual*, however, conflicts squarely with the SEC regulation. And although defendants include a copy of Part N, Rovner Declaration, Exh. A, they omit the cover page of the *Manual*. See Gershon Decl. II, ¶4, Exh. 2. As the cover warns, the statements in the *Manual* "are not binding due to their highly informal nature." It also states:

> The responses discussed in this manual do not necessarily reflect the views and policies of the Commission or the Division of Corporation Finance. These responses are not rules, regulations, or statements of the Commission. Further, the commission has neither approved nor disapproved these responses.

In fact, the SEC itself has successfully argued that a court should not use the *Manual* as an authority. *SEC v. Calvo*, 378 F.3d 1211, 1218-19 (11th Cir. 2004) ("The SEC's website is replete with unambiguous statements explaining that this interpretation is not binding. [Footnote omitted.]").

E. **The Proxy Statement Omits to Disclose the Number of Participants**

The SEC also requires that a proxy statement that solicits approval of a compensation plan must "indicate the approximate number of persons in each such class [of participants in the plan]." 17 C.F.R. §240.14a-101 (Item 10(a)(1)).

The Proxy Statement disclosed two classes of participants in the Plan, i.e., the five Named Executive Officers and "those other senior executives of the Company

whose compensation is approved by the Compensation Committee of the Board of Directors." Gershon Decl. (Aug. 10, 2007), ¶5, Exh. 3 at 25 ¶2. The Proxy Statement omits to "indicate the approximate number of [such] persons." *Id.*

Defendants argue that since the compensation of the "other senior executives" would be tax deductible without stockholder approval, the proxy statement was exempt from SEC regulations. Their support for this argument is that since tax deductibility of compensation was material in connection with the vote, where deductibility does not depend on the vote, the number of participants in the Plan is not material. The flaw here is that the SEC proxy regulations are mandatory, and they are unrelated to the issue of tax deductibility. They constitute *minimum* standards of disclosure. *Maldonado v. Flynn*, 597 F.2d 789, 796 (2d Cir. 1979) (emphasis added). Directors do not have the option to second guess the SEC, especially on the grounds that the information is not material. *Credit Suisse Securities (USA) LLC v. Billing*, ___ U.S.___, 127 S.Ct. 2383 (2007) (commenting on the expertise of the SEC); *Resnik v. Swartz*, 303 F.3d 147, 154-55 (2d Cir. 2002), *citing Lewis v. Vogelstein*, 699 A.2d 327, 332-33 (Del.Ch. 1997) (SEC has expertise to decide what facts a proxy statements must disclose). In *In re Craftmatic Sec. Litg.*, 890 F.2d 628, 641 n. 17 (3d Cir. 1989), the Third Circuit held, "Disclosures mandated by law are presumably material," citing Brudney, A NOTE ON MATERIALITY AND SOFT INFORMATION UNDER THE FEDERAL SECURITIES LAWS, 75 Va.L.Rev. 723 (1989). Professor Brudney wrote, 75 Va.L.Rev. 726-27:

> The sources of a person's duty to disclose information under the federal securities laws are found either in express mandates of the statutes and the rules

> promulgated under them or in the general antifraud provisions of the statutes and rules. The particular items of information mandated to be disclosed in the schedules under the registration and circular requirements of the 1933 Act or under sections 12, 13, and 14 of the 1934 Act are presumably automatically deemed to be 'material.' [Footnotes Omitted.]

The requirement to disclose the number of participants in the Plan is an "express mandate [ ] of the ... rules promulgated under ... section [ ] 14 of the 1934 Act."

Defendants argue that the Third Circuit retreated from its holding in *Craftmatic* "in the very next paragraph" of its opinion. It did no such thing. When the Third Circuit, in *Craftmatic*, addressed *TSC Industries v. Northway, Inc.*, 426 U.S. 438 (1976), it was addressing materiality *in the absence* of expressly mandatory disclosure requirements. The Third Circuit had drawn a distinction between "the duty to disclose specific information required by law ... [and] the duty to disclose any material facts that are necessary to make disclosed material statements, whether mandatory or volunteered, not misleading." It then added footnote 17, confirming that mandatory disclosures are presumptively material but that the materiality of non-expressly mandatory disclosures are determined under *TSC* standards. The Third Circuit held that facts concerning historical results were material under *TSC*, e.g., "an abnormally high level of consumer complaints" 890 F.2d at 640, but that predictions were not, e.g. "costs would far outstrip revenues," 890 F.2d at 641, 644.

II.     **THERE IS A CAUSAL LINK**

Defendants argue that there is no causal link between the Proxy Statement and corporate harm because plaintiff has not shown "that a reasonable shareholder would have voted any differently but for the alleged deficiencies in the Proxy Statement." DB at 28. It is unnecessary to make such a showing, for the Supreme Court held in *TSC Industries, Inc. v. Northway, Inc., supra,*, 426 U.S. at 449:

> It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote.

But we submit that it would have changed the vote if the Proxy Statement told the stockholders that the bonus would be paid no matter what, and the Company would get no tax deduction.

III.    **THERE IS NO REQUIREMENT OF CULPABILITY**

Recovery of monetary relief in an action arising from §14(a) of the Securities Exchange Act, 15 U.S.C. §78n(a), and Rule 14a-9, 17 C.F.R. §240.14a-9, does not require proof of scienter, but only negligence, unless the action is grounded in fraud. *California Public Employees' Retirement System v. Chubb Corp.*, 394 F.3d 126, 143-44, 145 n.9, 163, 168 (from the dissent) (3rd Cir. 2004); *Gould v. American Hawaiian Steamship Co.,* 351 F.Supp. 853, 858-65 (D.Del. 1972) ("individual liability for damages under §14(a) may be predicated on negligence"), *affd. in part, vacated on other grounds in part*, 535 F.2d 761, 777-78 (3rd Cir. 1976). This court applies the "due diligence" standard of negligence, *In re Reliance Sec.Lit.*, 135 F.Supp.2d 480, 511 (D.Del. 2001), a concept borrowed from §11 of the Securities Act of 1933, 15 U.S.C.

§77k, under which the defendant has the "burden of establishing [his] due diligence or lack of negligence." *Gould*, 351 F.Supp. at 859 n5. Negligence is not a state of mind; it relates to a standard of conduct. Prosser, Keeton, THE LAW OF TORTS, §31, p. 169 (5th ed. 1984).

By this instant motion for summary judgment, however, plaintiff is not seeking damages. Instead it seeks an injunction to undo the injury caused by a misinformed vote cast by stockholders. It seeks to enjoin the payment of bonuses in early 2008 and to terminate the Plan. Accordingly, plaintiff need not establish negligence, and due diligence is not a defense. Under such circumstances, the Third Circuit holds that whatever culpability standard is required where "damages or rescission of a sale are sought, we have no hesitancy in recognizing that for prospective relief looking to the protection of the franchise the test for the purposes of Rule 14a-9 is the objective sufficiency of the disclosure." *Ash v. LFE Corp.*, 525 F.2d 215, 220 (3rd Cir. 1975).

The result is the same under Delaware law. Hamermesh, CALLING OFF THE LYNCH MOB : THE CORPORATE DIRECTOR'S FIDUCIARY DUTY OF DISCLOSURE, 49 Vand.L.Rev. 1087, 1093-94 (1996). Professor Hamermesh wrote that: "by a plausible, and arguably mandatory, reading of Delaware case law, a court may be obliged to require directors to pay damages on account of a failure to disclose what is determined in hindsight to have been a material fact in connection with a transaction in which the directors had no self-interest and acted with the utmost good faith and due care." *Id.* at 1095. He also observed that: "As described in the Delaware cases, this fiduciary disclosure duty is deep, as well as broad. The duty is said to be strict, imposing liability

- 10 -

without regard to director negligence or other culpability; to afford stockholders a remedy without regard to whether they relied upon a statement made in violation of the duty. . . ." *Id.* at 1091 (citations omitted). *See also id.* at footnotes 18 to 23.

## IV. THE INDIVIDUAL DEFENDANTS WERE NEGLIGENT AS A MATTER OF LAW

The defendants argue that the plaintiff has not established that they were negligent. Even assuming plaintiff is required to establish negligence (which it is not; see Point III, *supra*) the facts at bar sufficiently do. The defendants threw caution to the wind. In the face of *Shaev v. Saper, supra*, which holds that "the material terms of the incentive plan and general performance goals on which the executive's compensation is based must, at a minimum, be disclosed." 320 F.3d at 383. Yet, the defendants authorized a Plan that had no performance metrics (DB at 24), and had an arbitrary, uncertain formula to calculate the maximum bonus. *Shaev v. Saper*, 320 F.3d at 381, holds that notwithstanding stockholder approval, the bonus is not deductible if the bonus would be paid in the face of stockholder rejection of the Plan. Yet that is what the defendants say they intend to do.

The defendants were obviously aware of *Shaev v. Saper* because the Plan extended the performance period from one quarter to a full year (DB at 6), as required by the Third Circuit. 320 F.3d at 380.

The defendants say (DB at 8-9) that the Proxy Statement was prepared by "the Company's legal and financial advisors," but they do not even argue that these "advisors" were independent. If the Proxy Statement were prepared by 3M employees,

- 11 -

it was not independently prepared. If these employees were not participants in the Plan, they worked for and reported to participants, directly or indirectly, who had control over them.

## V. PRE-SUIT DEMAND IS EXCUSED

Although the defendants say that the plaintiff argues that the complaint is "exempt" from the demand requirement (DB Demand at 12-14), the plaintiff makes no such argument. What the plaintiff argues is that demand is excused, upon the thoughtful analysis of the court in *Vides v. Amelio*, 265 F.Supp. 2d 273 (S.D.N.Y 2003). There the court reviewed Delaware law to the effect that demand is excused if the misconduct is not protected by the business judgment rule, *citing In re Anderson Clayton S'holder Litig.*, 519 A.2d 669, 675 (Del.Ch. 1986), and *In re Tri-Star Pictures, Inc. Litig.*, 1990 WL 82734, at *8 (Del.Ch. 1990). The defendants have addressed neither of these cases, even though these cases form the core of the *Vides* opinion on demand. Nor did the defendants address *In re Westinghouse Sec. Lit.*, 832 F.Supp. 989, 995 (W.D. Pa. 1993), concerning the interest of federal policy.

Defendants rely on *In re Walt Disney Deriv. Litig.*, 906 A.2d 27, 52, 67 (Del. 2006). But that case does not address the application of the business judgment rule to disclosure duties. Nor does *In re Walt Disney Deriv. Litig.*, 825 A.2d 275, 286 (Del.Ch. 2003).

Defendants cite *Shaev v. Saper, supra*, 320 F.3d at 377-78, as adverse to plaintiff's position. There, the Third Circuit excused demand on the grounds that the board was interested. The court did not reach the issue of demand as a disclosure issue.

While defendants do cite a number of derivative cases where courts have required a demand when the complaint alleged the existence a false or misleading proxy statement, in those cases there was either no allegation that the false proxy statement induced a vote harmful to the company, e.g., *Openwave Systems, Inc., Shareholder Deriv. Litig.*, 2007 WL 1456039 (N.D. Cal. 2007), or the federal proxy statement claim "amounted to 'an attempt to dress up an ordinary state breach of fiduciary duty claim in federal securities law clothing.'" *Halpert Enterprises, Inc. v. Harrison*, 2007 WL 486561 (S.D.N.Y 2007). None of those cases, however, addresses the Delaware rule that the breach of fiduciary disclosure duties is not protected by the business judgment rule.

Defendants do not raise a laches defense. But they say that plaintiff had more than five weeks after the distribution of the Proxy Statement "to object, demand, or even enjoin the vote." DB Demand at 9. See also DB at 2. The Proxy Statement was mailed to the stockholders on or about March 26, 2007 (DB at 9), the 85th day of the year. Even if plaintiff had sought an injunction that day, it is unlikely that the Plan could have been changed by the 90th day, March 31, to comply with the 90-day rule of 26 C.F.R. §1.162-27(e)(2)(i), the last day to pre-establish a plan for the tax deduction. The plaintiff is not in laches.

## VI. THERE ARE NO ISSUES OF MATERIAL FACT, AND PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

As a substitute for raising issues of fact, an impossible assignment at bar, the defendants have presented a total of 33 pages in their answering brief, and 23 pages in

their demand brief, in which they finely parse the language of the Proxy Statement as to its threat, cite a non-binding SEC staff compilation, and generally make arguments that elide the point. They object to plaintiff making a motion without enough affidavits and at the time that it did, even though F.R.Civ.P. 56(a) expressly allows the motion to be made "with or without supporting affidavits" and "after the expiration of 20 days from the commencement of the action." None of this puts any fact in dispute as to whether the Proxy Statement made an accurate disclosure of the Plan. Indeed, their prolixity serves only to establish that the Proxy Statement was worse than plaintiff thought in that the Plan is wholly discretionary with no performance goals as required by the Treasury Regulations and Third Circuit authority.

## CONCLUSION

Plaintiff has demonstrated that the Proxy Statement at issue in this case contains false and misleading statements about 3M's Annual Incentive Plan. The Proxy Statement falsely claims that payments under the Plan will be tax deductible if the plan is approved by the shareholders. And, as demonstrated, the Proxy Statement otherwise violates the proxy rules of the SEC. All the false, misleading and omitted statements are material. And because the completeness and accuracy of the Proxy Statement are not a matter of the business judgment of the directors, demand on them is not required.

There are no material facts in dispute. Plaintiff is therefore entitled to summary judgment.

Dated: September 20, 2007

RIGRODSKY & LONG, P.A.

By: /s/ Brian D. Long
Seth D. Rigrodsky (#3147)
sdr@rigrodskylong.com
Brian D. Long (#4347)
bdl@rigrodskylong.com
919 North market Street, Suite 980
Wilmington, DE 19801
T: 302.295.5310
*Attorneys for Plaintiff*

Of Counsel
Barrack, Rodos & Bacine
Alexander Arnold Gershon
Regina M. Calcaterra
Gloria Kui Melwani
1350 Broadway, Suite 1001
New York, New York 10018
(212) 688-0782

Barrack, Rodos & Bacine
Daniel E. Bacine
Two Commerce Square
2001 Market Street – Suite 3300
Philadelphia, Pennsylvania 19103
(215) 963-0600