IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INSULATORS AND ASBESTOS WORKERS LOCAL NO. 14,

Plaintiff,

-against-

GEORGE W. BUCKLEY, LINDA G. ALVARADO, VANCE D. COFFMAN, MICHAEL L. ESKEW, W. JAMES FARRELL, HERBERT L. HENKEL, EDWARD M. LIDDY, ROBERT S. MORRISON, AULANA L. PETERS, ROZANNE L. RIDGEWAY, PATRICK D. CAMPBELL, MOE S. NOZARI, FREDERICK J. PALENSKY, RICHARD F. ZIEGLER,

Defendants

And

3M COMPANY,

Nominal Defendant.

Case No.: 07-cv-00416-GMS

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO MOTION TO DISMISS UNDER FRCP 23.1**

RIGRODSKY & LONG, P.A.
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
919 North Market Street, Suite 980
Wilmington, DE 19801
T: 302.295.5310
srigrodsky@rigrodskylong.com
blong@rigrodskylong.com
Attorneys for Plaintiff

Of Counsel:
Barrack, Rodos & Bacine
Alexander Arnold Gershon
Regina M. Calcaterra
Gloria Kui Melwani
1350 Broadway, Suite 1001
New York, New York 10018
(212) 688-0782

Barrack, Rodos & Bacine
Daniel E. Bacine
Two Commerce Square
2001 Market Street – Suite 3300
Philadelphia, Pennsylvania 19103
(215) 963-0600

October 11, 2007

# TABLE OF CONTENTS

Table of Cases and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (ii)

NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT:

PRE-SUIT DEMAND IS EXCUSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF CASES AND AUTHORITIES

*In re Anderson Clayton Shareholder Litigation*,
519 A.2d 669 (Del.Ch. 1986) .......... 6, 9, 14

*Ash v. LFE Corp.*,
525 F.2d 215 (3d Cir. 1975) .......... 10

*Blasband v. Rales*,
971 F.2d 1034 (3rd Cir. 1992) .......... 6, 7

*Brehm v. Eisner*,
746 A.2d 244 (Del.Supr. 2000) .......... 8

*In re CNET Networks, Inc.*, .......... 8, 9, 10
483 F. Supp. 2d 947 (N.D. Cal. 2007)

*In re Computer Sciences Corp. Deriv. Litigation*,
2007 WL 132171 (C.D. Cal. 2007) .......... 8, 10

*Galef v. Alexander*,
615 F.2d 51 (2nd Cir. 1980) .......... 7

*Halpert Enterprises, Inc. v. Harrison*,
2007 WL 486561 (S.D.N.Y 2007) .......... 10

*Kamen v. Kemper Finance Serv., Inc.*,
500 U.S. 90, 111 S. Ct. 1711 (1991) .......... 6

*Openwave Systems, Inc., Shareholder Deriv. Litigation*,
2007 WL 1456039 (N.D. Cal. 2007) .......... 9

*Reo v. U.S. Postal Serv.*,
98 F.3d 73 (3rd Cir. 1996) .......... 6

*Securities and Exchange Commission v. Capital Gains Research Bureau, Inc.*,
375 U.S. 180 (1963) .......... 13

*Seinfeld v. Barrett*,
2006 WL 890909 (D.Del. 2006) .......... 7, 8, 11, 12

*Shaev v. Saper*,
320 F.3d 373 (3d Cir. 2003) .......... 3, 9

*St. Clair Shores General Employees Retirement System v. Eibeler*,
2006 WL 2849783 (S.D.N.Y 2006) .......... 7, 8, 14

*Stone v. Ritter*,
911 A.2d 362 (2006) .......... 12, 13

*In re Tri-Star Pictures, Inc. Litigation*,
1990 WL 82734 (Del.Ch. 1990) .......... 6, 8, 14

*Vides v. Amelio*,
265 F. Supp. 2d 273 (S.D.N.Y 2003) .......... 6, 7, 9, 10

*In re Walt Disney Deriv. Litigation*,
825 A.2d 275 (Del.Ch. 2003) .......... 12

*In re Walt Disney Deriv. Litigation*,
906 A.2d 27 (Del. 2006) .......... 12, 13

*In re Westinghouse Sec. Lit.*,
832 F. Supp. 989 (W.D. Pa. 1993) .......... 7, 8, 9

**STATUTES**

15 U.S.C. §78n (a) .......... 2

17 C.F.R. §229.402(a)(3) (Dec. 29, 2006) .......... 1
17 C.F.R. §240.14a-101 (Item 8(a) and (b)) .......... 11

26 C.F.R. §1.162-27(c)(2) .......... 1, 5, 11, 12
26 C.F.R. §1.1.62-27(e)(4)(i) .......... 3
26 U.S.C. §162(m)(3)(B) .......... 1

28 U.S.C. §1652 .......... 14

Fed.R.Civ.P. 23.1 .......... 6, 9

Plaintiff, Insulators and Asbestos Workers Local No. 14 Pension Fund, by its attorneys, submits this brief in opposition to defendants' motion to dismiss for failure to make a pre-suit demand in the above-captioned matter. This motion is supported by the declaration of A. Arnold Gershon, dated August 10, 2007, D.I. 21 (the "Gershon Decl.").

## NATURE AND STAGE OF THE PROCEEDING

This is a stockholder's derivative action on behalf of 3M Company, a Delaware corporation ("3M" or the "Company"), against its directors, who distributed a proxy statement that is materially incomplete, inadequate, false and misleading. Also defendants in this action are the "named executive officers." 26 U.S.C. §162(m)(3)(B); 17 C.F.R. §229.402(a)(3) (Dec. 29, 2006); 26 C.F.R. §1.162-27(c)(2). Plaintiff filed its complaint on June 28, 2007. Because there are no genuine issues of material fact, plaintiff has moved for summary judgment. Defendants have responded with motions to dismiss the complaint and to transfer the action to the District of Minnesota.

## SUMMARY OF ARGUMENT

1. Executive compensation has been the focus of attention in the past couple of years, with complaints that in many instances such compensation has been excessive. Shareholders can be most effective as gatekeepers to control excessive executive compensation only where they are provided adequate information about executive compensation plans before approving them.

2. The proxy statement at issue solicits the 3M stockholders' approval of an incentive plan for its executive officers, called the 3M Executive Annual Incentive Plan

(the "Plan"), under which 3M is to pay annual bonuses in cash or stock to its executive officers.

3. The defendants breached their fiduciary duty of disclosure by soliciting stockholder approval of a compensation plan by means of a false or misleading proxy statement.

4. Delaware law and federal policy govern the demand requirement and its exceptions.

5. Delaware law excuses demand if the challenged transaction is not protected by the business judgment rule.

6. The Delaware business judgment rule does not protect the breach of the fiduciary duty of disclosure in a proxy statement in a stockholders' derivative action that challenges the vote solicited by that proxy statement.

7. Delaware law excuses pre-suit demand.

8. Federal policy excuses pre-suit demand in a stockholder's derivative action to recover for the distribution of a false or misleading proxy statement in violation of 15 U.S.C. §78n (a) and the rules and regulations promulgated thereunder.

**STATEMENT OF FACTS**

For the annual meeting of 3M's stockholders on May 8, 2007, the individual defendants, except defendant Henkel, acting as the Company's board of directors, distributed a proxy statement that solicited the stockholders' proxies to be voted in favor of, *inter alia*, the election of defendant Henkel and the re-election of defendants Buckley,

Alvarado, Coffman, Eskew, Farrell, Liddy, Morrison, Peters, and Ridgway to the board of directors and approval of the Plan. Gershon Decl., ¶5, Exhibit 3, pp. 18-20.

The proxy statement represented that the proposed Plan would replace the old, non-deductible Executive Profit Sharing Plan,[1] and that under the proposed Plan the named executive officers' compensation would be deductible by the Company for federal income tax purposes if the Plan is approved by the stockholders. Gershon Decl. ¶5, Exhibit 3, at pp. 25-27. But if the stockholders were to fail to approve the Plan, the proxy statement said the Company might implement it without stockholder approval and make payments to the named executive officers anyway. Or, the proxy statement represented, the Company might revive the non-deductible Executive Profit Sharing Plan that the new Plan was supposed to have replaced, or the Company might select some other method of paying bonuses. Gershon Decl. ¶5, Exh. 3, p. 27. But one thing was clear: the Company was going to pay bonuses no matter what.

The defendants threatened and intended to make incentive payments even if the Company's stockholders were to disapprove the Plan. Not only was this threat coercive in its effect, but no vote of the stockholders would have made the incentive payments deductible. Because of the statement about the non-tax-deductible alternatives the Company would consider if the vote failed, the Company would not be entitled to the deduction even if the stockholder vote approved the Plan. 26 C.F.R. §1.1.62-27(e)(4)(i):

---

1. Defendants assert that the Executive Profit Sharing Plan was tax deductible. Coffman Decl. ¶4, D.I. 31. That plan paid bonuses on a quarterly basis and, therefore, was not tax deductible. *Shaev v. Saper*, 320 F.3d 373, 380 (3d Cir. 2003).

> Shareholder Approval General Rule. ... The requirements of this paragraph (e)(4) are not satisfied if the compensation would be paid regardless of whether the material terms are approved by the shareholders.

Accordingly, the representation in the proxy statement that bonuses under the Plan would be deductible if the stockholders approve the Plan was materially false or misleading.

The proxy statement also omitted to disclose the maximum bonus that can be paid to any one employee or the formula used to calculate that bonus. It represented that the maximum was to be a percentage of 3M's adjusted net income, *i.e.,* GAAP net income "as adjusted to exclude special items." Gershon Decl. ¶5, Exh. 3, pp. 26, H-1, ¶2(a). But the proxy statement omitted to identify those "special items."[2] The proxy statement also omitted to disclose the number of participants that are not "named executive officers." The proxy statement also omitted a New Plan Benefits Table. All these omitted facts were expressly required to be disclosed by federal regulations.

Plaintiff has alleged that the Plan contained performance metrics, as stated on page 34 of the Proxy Statement, but that they were not disclosed in sufficient detail. Cpl. ¶25. Now the defendants say that the page 34 metrics applied to executives other than the Named Executive Officers and that "the Plan for which shareholder approval was sought does not contain defined 'performance metrics'." (Defendants' brief in opposition to

---

2. In opposing plaintiff's motion for summary judgment, defendants argue that special items are reported in the Company's Form 8-Ks in the presentation of unaudited non-GAAP measures. The Proxy Statement, however, omitted any reference to those Forms 8Ks, and "special items" is an uncertain term that is not defined by GAAP or the SEC. *See* Plaintiff Reply Brief in Support of Summary Judgment at pages 3-5, D.I. 36.

motion for summary judgment, at 24, D.I. 30.) The Treasury Regulations require that a performance goal must be "established in writing ... not later than 90 days after the commencement of the [year]." 26 C.F.R. §1.162-27(e)(2)(i). They also require that the goal must state the method for computing the amount of the bonus in terms of an objective formula or standard, i.e., that "a third party having knowledge of the relevant performance results could calculate the amount to be paid to the employee." 26 C.F.R. §1.162-27(e)(2)(ii). This Plan has no such performance goal because the compensation committee has discretion to determine the bonus. Moreover, the maximum bonus is based on the Company's net income adjusted by excluding "special items," which are vague, uncertain, and undefined by GAAP and SEC regulations. Therefore, no tax deduction is available, and it is false to represent that bonuses under this Plan qualify for tax deductions.

Omission of the foregoing disclosures from the proxy statement was a violation of express statutory and regulatory requirements, which require sufficient information to give stockholders the ability to assess whether it will be easy or hard for executive officers to achieve a large bonus, whether achievement of bonuses is substantially uncertain, and whether bonuses will be earned only for genuine accomplishments. For example, a shareholder could not determine from the Proxy Statement whether executive officers can achieve a bonus even if the Company's earnings decline from year to year. Since adjusted net income has no GAAP or SEC definition, and since the committee has unlimited discretion to define adjusted net income and to decide bonuses, the proxy statement was materially false or misleading.

**ARGUMENT**

**PRE-SUIT DEMAND IS EXCUSED**

In this stockholders' derivative action in federal court, Fed.R.Civ.P. 23.1 provides the pleading standards for the pre-suit demand allegations, and state law ordinarily, with exceptions, governs the substance of the requirement to make demand. *Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90, 98-99, 111 S.Ct. 1711, 1717 (1991); *Blasband v. Rales*, 971 F.2d 1034, 1047 (3rd Cir. 1992). The state law that applies is the state of incorporation, *Kamen, supra*, 500 U.S. at 108-109; *Blasband v. Rales, supra*, which at bar is Delaware.

The exception in this area, as in other areas where federal courts apply state law, is that federal courts do not apply state law where it would impair federal policy. *Kamen, supra*, 500 U.S. at 98; *Reo v. U.S. Postal Serv.*, 98 F.3d 73, 76 (3rd Cir. 1996).

In *Vides v. Amelio*, 265 F. Supp. 2d 273, 275-76 (S.D.N.Y 2003), the court held that, under Delaware law and federal policy, demand was excused in a stockholder's derivative action where the complaint alleged that misstatements in and omissions from a proxy statement prevented an informed vote by the stockholders. The *Vides* court reviewed the Delaware rule that proper disclosure to solicit a vote of stockholders does not concern the "management of business and affairs" of a corporation and that such disclosure is not an issue "inherently of the kind which courts are ill suited to treat on their merits," *citing In re Anderson Clayton S'holder Litig.*, 519 A.2d 669, 675 (Del.Ch. 1986). *Vides* also held that false or misleading disclosures in a proxy statement to solicit a vote of stockholders are not protected by the business judgment rule, *citing In re Tri-Star Pictures,*

*Inc. Litig.*, 1990 WL 82734, at *8 (Del.Ch. 1990). As the court held in *Blasband v. Rales, supra*, 971 F.2d at 1048, if the board's conduct is not protected by the business judgment rule, pre-suit demand is excused.

The *Vides* court reviewed federal policy, *citing Galef v. Alexander*, 615 F.2d 51, 63-64 (2nd Cir. 1980), and observed that the business judgment rule cannot be invoked by directors who are sued in a stockholder's "derivative action for providing inadequate information in connection with a proxy solicitation." 265 F. Supp. 2d at 276. *See also In re Westinghouse Sec. Lit.*, 832 F. Supp. 989, 998 (W.D. Pa. 1993) (court held that it would be a misapplication of the business judgment rule to allow a demand defense to a stockholder's derivative action alleging that the directors had made inadequate disclosures in a proxy statement, and this is the rule "regardless of their independence").

In *Seinfeld v. Barrett*, 2006 WL 890909 at *3 (D.Del. 2006), this court held that demand was excused when the complaint alleged that a proxy statement misrepresented the deductibility of bonuses and omitted such material terms as the variables used and the amount of the bonuses. This Court held that "[t]hese allegations could raise issues as to the honesty and good faith of the Directors." *Id.*

In *St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*, 2006 WL 2849783 at *5 (S.D.N.Y 2006), the court rejected *Vides*, holding that, although a board's decision to distribute a materially false proxy statement is not protected by the business judgment rule, still, pre-suit demand is required in a stockholder's derivative action to redress the corporate injury resulting from that false proxy statement. But *St. Clair* is inconsistent with

Delaware law, which excuses demand when the action seeks redress for a board's conduct that is not protected by the business judgment rule. As the court held in *Brehm v. Eisner*, 746 A.2d 244, 256 (Del.Supr. 2000):

> The test of demand futility is a two-fold test under *Aronson* and its progeny. The first prong of the futility rubric is "whether, under the particularized facts alleged, a reasonable doubt is created that ... the directors are disinterested and independent." The second prong is whether the pleading creates a reasonable doubt that "the challenged transaction was otherwise the product of a valid exercise of business judgment." These prongs are in the disjunctive. Therefore, if either prong is satisfied, demand is excused. [Footnotes omitted.]

The *St. Clair* court did not state or follow the aforesaid Delaware rule as expressed in *Brehm v. Eisner*. Nor did the *St. Clair* court cite *Seinfeld v. Barrett, supra*, at *3, or *In re Westinghouse Sec. Lit., supra.* Instead, the *St. Clair* court held that the Delaware Chancery Court's conclusion in *In re Tri-Star Pictures, Inc. Litig.*, 1990 WL 82734 at *8 (Del.Ch. 1990), that demand is excused in a proxy statement case, was "unwarranted" under Delaware law. *St. Clair, supra,* at *4.

Two courts have followed *St. Clair* on the demand question. *In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 966 (N.D. Cal. 2007), and *In re Computer Sciences Corp. Deriv. Litg.*, 2007 WL 132171 at *4 n.4 (C.D. Cal. 2007). Neither court, however, addressed the exceptions to the demand rule under Delaware law, and neither court cited *Seinfeld v. Barrett, supra,* at *3 or *In re Westinghouse Sec. Lit., supra*. Plaintiff submits that this court should reject *St. Clair, CNET,* and *Computer Sciences* as incorrect under Delaware law.

Although the defendants say that the plaintiff argues that the complaint is "exempt" from the demand requirement (DB Demand[3] at 12-14, D.I. 29), the plaintiff makes no such argument. What the plaintiff argues is that demand is *excused*, upon the thoughtful analysis of the court in *Vides v. Amelio, supra*. As previously noted, there the court reviewed Delaware law to the effect that demand is excused if the misconduct is not protected by the business judgment rule, *citing In re Anderson Clayton S'holder Litig., supra,* and *In re Tri-Star Pictures, Inc. Litig., supra*. The defendants have addressed neither of these cases, even though these cases form the core of the *Vides* opinion on demand. Nor did the defendants address *In re Westinghouse Sec. Lit., supra*, concerning the interest of federal policy.

Defendants cite *Shaev v. Saper, supra*, 320 F.3d at 377-78, as adverse to plaintiff's position. But there the Third Circuit excused demand on the grounds that the board was interested and never reached the issue of demand as a disclosure issue.

While defendants do cite a number of derivative cases, involving the backdating of stock options, where courts have required a demand when the complaint alleged the existence a false or misleading proxy statement, in those cases there was no allegation that the false proxy statement prevented an informed vote of the stockholders, e.g., *Openwave Systems, Inc., Shareholder Deriv. Litig.*, 2007 WL 1456039 (N.D. Cal. 2007). In *In re CNET Networks, Inc., supra*, 483 F. Supp. 2d at 954-55, another stock options backdating case, plaintiffs' arguments for excusing demand do not include a false proxy statement. The §14(a) argument, 483 F. Supp. 2d at 966, does not address any vote of the

3. Defendants' opening brief in support of their motion to dismiss under F.R.C.P. 23.1.

stockholders.[4] In *In re Computer Sciences Corp. Deriv. Litig.*, 2007 WL 132171 (C.D. Cal. 2007), there is no allegation that the false proxy statement prevented an informed vote by stockholders. In other cases cited by defendants, the federal proxy statement claim "amounted to 'an attempt to dress up an ordinary state breach of fiduciary duty claim in federal securities law clothing.'" *Halpert Enterprises, Inc. v. Harrison*, 2007 WL 486561 (S.D.N.Y 2007). Moreover, none of those cases addresses the Delaware rule that prevention of an informed vote of the stockholders by the breach of fiduciary disclosure duties is not protected by the business judgment rule.

Defendants argue that they bear no substantial risk of liability and that, therefore, demand is required. There are two reasons for the court to reject this argument. First, the mere allegation that a stockholder vote was tainted by a false or misleading proxy statement is sufficient to excuse demand. In *Vides v. Amelio, supra*, demand was excused even though the complaint was dismissed for failure to state a claim. Second, where the complaint seeks specific relief based upon false or misleading disclosures to stockholders, the issue is whether the disclosure is actually full and fair, not whether the management is culpable. *See, Ash v. LFE Corp.*, 525 F.2d 215, 220 (3d Cir. 1975) ("for prospective relief looking to the protection of the franchise the test for the purposes of Rule 14a-9 is the objective sufficiency of the disclosure").

---

4. Defendants cite *In re CNET Networks, Inc., supra*, 483 F. Supp. 2d at 963, 966, for the quote, "Simply approving the options that were backdated is not sufficient." The quote attributed to *CNET*, however, cannot be found in *CNET*, or anywhere else.

Defendants argue that demand is required on the grounds that the full board relied on the recommendations of the compensation committee in approving (1) the Plan and (2) the Proxy Statement discussion of the Plan. (DB Demand at 19-20.) There is nothing in the record, however, to support these assertions. None of the defendants' declarations states that the full board relied on the compensation committee for this. DB Demand at 19, cites the Proxy Statement at 33-34, 39 as the source of these facts. Page 39 recites that the full board relied on the compensation committee to include in the Proxy Statement the Compensation Discussion and Analysis (the "CD&A"), required by 17 C.F.R. §229.402(b) and 17 C.F.R. §240.14a-101 (Item 8(a) and (b)), which appears at pages 32-39 of the Proxy Statement. But the CD&A does not address the Plan, according to the defendants' brief in opposition to summary judgment, at 24, D.I. 30. Instead, it addresses the compensation of executives who are junior to the named executive officers. The defendants say:

> (Compare Proxy Statement at 25-27 (describing material terms of the ... Plan) with *id.* at 34 (describing plan applicable to other executives and eligible employees).) Page 24, D.I. 30.

And while the declarations refer to the engagement of outside compensation consultants, Coffman Decl. at ¶¶4-7, D.I. 31; Larson Decl. ¶7, D.I. 25, there is no statement that the consultants reviewed the Plan or gave any advice except to enlarge the performance period from one quarter to one year. Coffman Decl. ¶7, D.I. 31.

Plaintiff relies in part on *Seinfeld v. Barrett, supra*, at *3, which held:

> While Plaintiff has failed to demonstrate that the directors are interested or lack independence, the Court concludes

> that Plaintiff has pleaded facts sufficient to raise a reason to doubt that the action was taken honestly and in good faith. In his Complaint, Plaintiff alleges that Defendants made a false or misleading statement when they promised tax deductions to shareholders in return for their approval of the EOIP, when, in fact, no tax deduction would result under 26 C.F.R. §1.162-27(e)(4)(i). Plaintiff further alleges that Defendants misled shareholders when they omitted material terms, namely the variables used and the amount of the bonuses for 2005. These allegations could raise issues as to the honesty and good faith of the Directors. Accordingly, the Court concludes that demand on the Board would be futile, and the Court will, therefore, deny Defendants' Motion To Dismiss Based Upon Failure To Comply With Rule 23.1 (D.I. 15).

Taking a page from this opinion, the complaint at ¶13(a), alleging that demand is excused, in part states:

> Third, allegations that a Proxy Statement has materially false or misleading representations and omissions could raise issues as to the honesty and good faith of the directors.

The similarities between the case at bar and *Seinfeld v. Barrett, supra*, call for the same result.

Defendants rely on *In re Walt Disney Deriv. Litig.*, 906 A.2d 27, 52, 67 (Del. 2006), to argue that in making disclosures a board is presumed to act in good faith. But that case does not address disclosure duties. Nor does *In re Walt Disney Deriv. Litig.*, 825 A.2d 275, 286 (Del.Ch. 2003). The defendants argue that Judge Farnan's decision in *Seinfeld v. Barrett* predates *Walt Disney*, 825 A.2d at 286, and *Stone v. Ritter*, 911 A.2d 362 (2006), and does not reflect the current Delaware rule "that bad faith requires intentional misconduct." DB Demand at 22. Actually, that is not the Delaware rule.

In *Walt Disney* and *Stone v. Ritter* the Delaware Supreme Court emphasized that the determination of "bad faith" requires a flexible standard. And neither case addressed disclosure duties, but rather, respectively, personnel issues and supervision of management. In *Stone v. Ritter, supra*, 911 A.2d at 369, the court reconfirmed its decision in *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d at 67, concerning "examples of conduct that would establish a failure to act in good faith." The court gave three examples and held:

> There may be other examples of bad faith yet to be proven or alleged, but these are three of the most salient.

The *Stone* court specifically cited to page 67 of *Disney*, where the Supreme Court had quoted the Chancery Court's list of examples of bad faith. The Supreme Court added:

> For these reasons, we uphold the Court of Chancery's definition as a legally appropriate, *although not the exclusive*, definition of fiduciary bad faith. We need go no further. To engage in an effort to craft (in the Court's words) "a definitive and categorical definition of the universe of acts that would constitute bad faith" [footnote omitted] would be unwise and *is unnecessary to dispose of the issues presented on this appeal*. [Emphasis added.]

The Delaware rule on what is necessary to establish failure to act honestly and in good faith is a flexible rule not graved in stone. Where a breach of the fiduciary duty of disclosure is concerned, the Delaware rule is prepared to meet new inventions of unfaithfulness. *See also, Securities and Exchange Commission v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 193 n.41 (1963) (equity holds that "to define strictly the species or evidence of [fraud]" would result in it being "perpetually eluded by new schemes which the fertility of man's invention would contrive," quoting Lord Hardwicke).

**CONCLUSION**

The Delaware Chancery Court has carefully explained that the directors' decisions as to what to disclose to stockholders when soliciting their proxies "is not a decision concerning the management of business and affairs of the enterprise (8 Del.C. §141(a)) of the kind the business judgment rule is intended to protect. ...[the disclosure duty] is a thing apart from the duty and authority to deal with the property. ..." *In re Anderson Clayton Sh.Lit., supra*. The demand requirement is rooted in the business judgment rule, which does not apply to the question whether stockholders were given appropriate disclosures. *In re Tri-Star Pictures, Inc. Litig., supra.* One case cited by defendants called this an "unwarranted conclusion." *St. Clair Shores General Employees Retirement System v. Eibler, supra.* But these are conclusions of Delaware law that were drawn by the Delaware Chancery Court, which federal courts must follow, absent a strong indication that the Delaware Supreme Court would reject them. 28 U.S.C. §1652. And these are conclusions that the defendants are unable and unwilling to dispute.

Thus, based on the foregoing controlling case law, no pre-suit demand is needed here. Both Delaware law and federal policy excuse pre-suit demand.

The court, therefore, should deny defendants' motion to dismiss under F.R.Civ. P. Rule 23.1.

RIGRODSKY & LONG, P.A.

Dated: October 11, 2007

By: [signature]
Seth D. Rigrodsky (#3147)
sdr@rigrodkylong.com
Brian D. Long (#4347)
dbl@rigrodskylong.com
919 North Market Street, Suite 980
Wilmington, DE 19801
T: 302.295.5310
*Attorneys for Plaintiff*

Of Counsel:

Barrack, Rodos & Bacine
Alexander Arnold Gershon
Regina M. Calcaterra
Gloria Kui Melwani
1350 Broadway, Suite 1001
New York, New York 10018
(212) 688-0782

Barrack, Rodos & Bacine
Daniel E. Bacine
Two Commerce Square
2001 Market Street – Suite 3300
Philadelphia, Pennsylvania 19103
(215) 963-0600

3M-FRCP23.1BRF